BEEBEE v HASLETT PUBLIC SCHOOLS

1. SCHOOLS AND SCHOOL DISTRICTS—REVIEW—TEACHERS' TENURE COM-
    MISSION—STANDARD OF REVIEW—CONSTITUTIONAL LAW—DE
    NOVO REVIEW.

    The standard of review of a decision of the Teachers' Tenure
    Commission is the determination of whether the decision is
    authorized by law, and, if a hearing was held, whether the
    decision is supported by competent, material and substantial
    evidence on the whole record; a *de novo* review by a trial court,
    in which the court reviewed the record and made its own
    determination concerning the credibility of witnesses, the
    weight of evidence and the merits of the case, was improper
    (Const 1963, art 6, § 28).

2. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—DISMISSAL OF TEACH-
    ERS—TEACHING PHILOSOPHY.

    A school board which disagrees with the teaching philosophy of a
    tenured teacher whose students' achievement level is equal to
    that of their peers may not dismiss the teacher solely because
    of the disagreement.

3. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—DISMISSAL OF TEACH-
    ERS—FITNESS TO TEACH.

    Just and reasonable cause for dismissal of a tenured teacher can
    be shown only by significant evidence proving the teacher is
    unfit to teach; the focus of this evidence must be the effect of
    the questioned activity on the teacher's students and, secondar-
    ily, the effect on other teachers and school staff.

4. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—DISMISSAL OF TEACH-
    ERS—FITNESS TO TEACH—FACTORS CONSIDERED.

    A board of education, in determining whether a teacher's conduct
    indicates unfitness to teach, may consider such matters as: the
    likelihood that the conduct may have adversely affected stu-
    dents or fellow teachers; the degree of such adversity antici-
    pated; the proximity or remoteness in time of the conduct; the
    type of teaching certificate held by the teacher; the extenuating

REFERENCE FOR POINTS IN HEADNOTES
[1–7] 68 Am Jur 2d, Schools § 208 *et seq.*

or aggravating circumstances, if any, surrounding the conduct; the likelihood of recurrence of the questioned conduct; and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers.

5. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—DISMISSAL OF TEACH- ERS—FITNESS TO TEACH—SPECIFIC DETERMINATIONS.

A board of education and the Teachers' Tenure Commission should, in each case involving a teacher's discharge, make specific determinations concerning the teacher's knowledge of his subject, his ability to impart it, the manner and efficacy of his discipline over his students, his rapport with parents and other teachers, and his physical and mental ability to withstand the strain of teaching; the effect on the school and its students of the acts alleged to require dismissal must be delineated in every case.

6. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—TEACHERS' TENURE ACT—DISMISSAL OF TEACHERS—DETRIMENTAL EFFECTS.

The teachers' tenure act does not deprive local school boards of their statutory administrative control over teachers, but a discharge of a tenured faculty member based on curriculum policy is required to be rationally and specifically related to a detrimental effect on the school and its students (MCLA 38.71 *et seq.;* MSA 15.1971 *et seq.*).

7. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—TEACHERS' TENURE COMMISSION—REINSTATED TEACHER—BACK PAY—MITIGATING FACTORS.

The Teachers' Tenure Commission, in determining the amount of back pay to which a reinstated tenured teacher is entitled, shall deduct from the salary the teacher would have earned all wages she actually earned that she would not have earned had she been employed as a teacher; and shall consider any evidence the school district offers that the teacher, through exertion of proper efforts, could have earned more.

Appeal from Ingham, Ray C. Hotchkiss, J. Submitted December 9, 1975, at Lansing. (Docket No. 21048.) Decided January 26, 1976. Leave to appeal applied for.

Louise Beebee was dismissed from her employment as a teacher by the board of education of the Haslett Public Schools. The dismissal was upheld

by the State (Teachers') Tenure Commission. Plaintiff appealed to the circuit court, which reversed and ordered the plaintiff reinstated. Defendant school district appeals by leave granted. Affirmed and remanded to the Tenure Commission for determination of back pay.

*Foster, Swift & Collins, P. C.* (by *James A. White),* for plaintiff.

*Thrun, Maatsch & Nordberg* (by *James T. Maatsch* and *Donald J. Bonato),* for defendant.

Before: McGREGOR, P. J., and T. M. BURNS and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Defendant appeals, by leave granted, a June 18, 1974 amended order of the Ingham County Circuit Court which reversed a decision of the State Tenure Commission. The commission had, by a three to two vote, upheld a decision by defendant's board of education to dismiss plaintiff, a tenured elementary school teacher. The circuit court reversed the commission and ordered plaintiff reinstated.

In urging our reversal of the trial court's decision, defendant contends that the court applied the wrong standard for reviewing a decision of the Tenure Commission. As defendant states, the standard of review of Tenure Commission decisions is the same as that applied to decisions and rulings of other state agencies:

"[Appellate] review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are *supported by competent, material and substantial evidence on the whole record."* Const 1963, art 6, § 28.

Defendant argues that the trial court conducted a *de novo* review. We find that the record supports this contention. In his opinion the trial judge stated:

"If Mrs. Beebee had been unable to introduce evidence as to her effectiveness in teaching while positive uncontradicted testimony abounded indicating her incompetency, this Court would have no choice but to sustain the Commission's holding. However, numerous witnesses, parents and professionals, testified on behalf of the appellant and appellees as to the condition of the classroom and Mrs. Beebee's performance."

We find this a clear indication that the trial judge reviewed the record and made his own determination concerning the credibility of witnesses, the weight of evidence and the merits of the case. Such a *de novo* review is improper. *Rehberg v Board of Education of Melvindale, Ecorse Township School District No 11,* 345 Mich 731; 77 NW2d 131 (1956), *Freiberg v Board of Education of Big Bay De Noc School District,* 61 Mich App 404; 232 NW2d 718 (1975).

Although we find that the trial court's standard of review was improper, our review of the record convinces us that the trial court's result was correct. We conclude that the ground on which the Tenure Commission relied in dismissing plaintiff is not sufficient as a matter of law to support plaintiff's discharge. Central to our holding is the standard for discharging a tenured teacher enunciated in MCLA 38.101; MSA 15.2001:

"Discharge or demotion of a teacher on continuing tenure may be made only for *reasonable and just cause".* (Emphasis supplied.)

In the instant case, the Tenure Commission

heard a great deal of conflicting evidence regarding plaintiff's fitness as a teacher. Defendant admitted that plaintiff's students were no worse in ability or achievement level than other children in the same group. Some of the evidence, if given credence and significant weight, might have been sufficient to warrant a commission finding upholding plaintiff's discharge. In its conclusion, however, the commission relied on a ground which we find insufficient to represent "reasonable and just cause". The commission stated:

"The majority of the Commission members, however, are in agreement that one cannot deny to a local board of education the right to determine the policies and conditions for operating the school system under its jurisdiction.

"There is no precedent that insists that a board must accept a particular method of teaching even if that method has been proved to be effective. Discipline, order, and safety, may be defined locally by the board of education. A board of education has the right to accept student permissiveness in one school district while a neighboring board could judge this same permissiveness as grounds for dismissal of the teacher.

"Herein lies the rationale for the decision in this case. The testimony presented by the appellee and the appellant clearly indicated that there was little or no agreement as to definition of terms. The appellant therefore presented no evidence that she would be inclined to redefine her terms to wholly or partially agree with the position of the Board of Education.

* * *

"As the appellant, Mrs. Louise Beebee, found it impossible to follow, and perhaps even to understand, the philosophy and position of the local Board of Education, and as the appellee had the legal and moral responsibility to establish such a position, the majority of the Commission therefore upholds the decision of the local Board in the dismissal of the appellant as a reasonable action in the light of the evidence presented."

The three person Tenure Commission majority, in effect, held that, where a school board disagrees with the teaching philosophy of a tenured teacher, it may dismiss that teacher even where his or her students' achievement level is equal to that of their peers. Two members disagreed with this position. We also disagree.

Although "just and reasonable cause" is crucial to the teachers' tenure scheme, this concept has received little judicial explanation in this jurisdiction.[1] Any such definition must, of course, be consistent with the purposes underlying the tenure act. The Supreme Court, in *Rockwell v Crestwood School District Board of Education*, 393 Mich 616, 632; 227 NW2d 736 (1975), stated that:

"These goals, as set forth in *Rehberg v Ecorse School Dist No 11*, 330 Mich 541, 545; 48 NW2d 142 (1951), quoting cases from foreign jurisdictions, are to 'maintain an adequate and competent teaching staff, free from political and personal arbitrary interference'; to promote 'good order and the welfare of the State and of the school system by preventing removal of capable and experienced teachers at the personal whims of changing office holders'; and 'to protect and improve State education by retaining in their positions teachers who are qualified and capable and who have *demonstrated their*

[1] Dismissal cases have involved pending felony charges, *Wright v Port Huron Area School District*, 13 Mich App 1; 163 NW2d 673 (1968), absenteeism and tardiness, *Caddell v Ecorse Board of Education*, 17 Mich App 632; 170 NW2d 277 (1969), and breach of sabbatical leave agreement, *Rumph v Wayne Community School District*, 31 Mich App 555; 188 NW2d 71 (1971), *lv granted and remanded* 393 Mich 809 (1975). The lack of funds has been held to be insufficient cause for terminating a contract. *Bruinsma v Wyoming Public Schools*, 38 Mich App 745; 197 NW2d 95 (1972), *lv den* 387 Mich 783 (1972). Penalties are prescribed by statute for such school-related occurrences as refusal to answer questions at teacher's certificate proceedings, MCLA 340.864; MSA 15.3864, acting as an agent or accepting a gift for influence in recommending school supplies, MCLA 340.968; MSA 15.3968, disorderly conduct at a school meeting, MCLA 340.970; MSA 15.3970. It is unclear if a violation of these provisions would result in a loss of tenure.

*fitness,* and to prevent the dismissal of such teachers without just cause'." (Footnote omitted.) (Emphasis supplied.)

Given the presumption of fitness engendered by tenure status, "just and reasonable cause" can be shown only by significant evidence proving that a teacher is unfit to teach. Because the essential function of a teacher is the imparting of knowledge and of learning ability, the focus of this evidence must be the effect of the questioned activity on the teacher's students. Secondarily, the tenure revocation proceeding must determine how the teacher's activity affects other teachers and school staff.

A number of other jurisdictions have statutes specifying the grounds for discharging a tenured teacher. These usually focus on "incompetency" and "inefficiency", matters which directly affect the students. See Annot., *What Constitutes "Incompetency" or "Inefficiency" as a Ground for Dismissal or Demotion of Public School Teacher,* 4 ALR3d 1090. In addition to these grounds, case law in other jurisdictions has upheld discharges based on immorality, drug use,[2] physical appearance,[3] and disloyalty.[4] In all of these cases, the court stressed the detrimental effect of the ground for dismissal on the students' intellectual and moral growth. Activities outside the classroom have warranted discharge where they brought such notoriety to the teacher that his teaching

[2] *See* Annot., *Use of Illegal Drugs as Ground for Dismissal of Teacher, or Denial or Cancellation of Teacher's Certificate,* 47 ALR3d 754.

[3] *See* Annot., *Dismissal of, or Disciplinary Action Against, Public School Teacher for Violation of Regulation as to Dress or Personal Appearance of Teachers,* 58 ALR3d 1227.

[4] *See* Annot., *Dismissal or Rejection of Public School Teacher Because of Disloyalty,* 27 ALR2d 487.

ability was impaired. Special care must be taken to show this link between out-of-school acts and in-school behavior.

Very instructive is the California Supreme Court decision in *Morrison v State Board of Education,* 1 Cal 3d 214; 82 Cal Rptr 175; 461 P2d 375 (1969). Defendant board of education revoked plaintiff's teaching license for a single out-of-school homosexual episode between plaintiff and another adult. The incident violated no law. There was no evidence that plaintiff had engaged in any other such episode, attempted to solicit any of his students or to impress any homosexual preference on his students. The *Morrison* court held that, although "immorality" was a statutory ground for dismissal, plaintiff was improperly dismissed. The court held that, before any act could be deemed a ground for discharge, it must bear directly on the teacher's fitness to teach and must cause a clearly discernible detriment to the school and to its students. The Court concluded:

"We therefore conclude that the Board of Education cannot abstractly characterize the conduct in this case as 'immoral,' 'unprofessional,' or 'involving moral turpitude' within the meaning of section 13202 of the Education Code unless that conduct indicates that the petitioner is unfit to teach. In determining whether the teacher's conduct thus indicates unfitness to teach the board may consider such matters as *the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling*

*effect upon the constitutional rights of the teacher involved or other teachers.* These factors are relevant to the extent that they assist the board in determining whether the teacher's *fitness to teach, i.e.,* in determining whether the teacher's future classroom performance and overall impact on his students are likely to meet the board's standards." 1 Cal 3d 214, 229–230 (Footnotes omitted.) (Emphasis supplied.)

We concur in this rationale and adopt these guidelines.

We note further that school boards and the Tenure Commission should, in each case, make specific determinations concerning the challenged teacher's knowledge of his subject, his ability to impart it, the manner and efficacy of his discipline over his students, his rapport with parents and other teachers, and his physical and mental ability to withstand the strain of teaching. In every case, the effect on the school and its students of the acts alleged to require dismissal must be delineated. Specifically enunciated "professional standards" should be used to adjudge the teacher's fitness. These standards should be clear to teachers so that they may serve to both guide and judge them. Adjudications should be the product of ongoing contact, observation, and published judgments by numerous persons of different backgrounds and expertise. Frequently, a teacher will be deemed lacking in some abilities and capable in other areas. In such a case, the judgment of his quality will involve a determination of priorities, of which disciplines are more important to the school than others. Such priorities should, too, be carefully enunciated. The definition of goals and objectives as well as a working dialogue will be products of an ongoing evolution and enunciation of standards.

We may best explain our holding by applying these standards to the instant facts. Most of the testimony presented at the commission hearing was concerned with plaintiff's teaching technique and with her personality. Some favored plaintiff and her methods while others did not. The result of such evidence was that plaintiff was shown to be dedicated, to have different methods and that she did not get along with some of her students' parents and with the principal. What was not shown was that plaintiff's methods injured her students mentally or physically in relation to their peers.

Should we require tenured teachers to teach alike and to be liked by everyone? We think not. The latter requirement is ridiculous on its face. Some parents will always criticize a teacher, especially one who utilizes methods different from those used when they went to school. A teacher who is criticized by all the parents and who refuses to listen to any of their grievances would surely have an effect on the school detrimental enough to jeopardize his or her tenure. This is not the case here. Plaintiff spent extra time after class hours to listen to parents. A number of parents testified in her behalf.

It would be similarly unreasonable to require all teachers to teach alike or lose their tenure. Experience has shown that there is no one "right" way to teach. Different environments and types of students require different teaching methods. Some degree of variance in methods and classroom experimentation is vital to any school that seeks to be flexible enough that it may adapt to changing circumstances and may incorporate new techniques of imparting learning skills. As the United States Supreme Court noted in a related context,

intellectual stimulation of teacher and student is best served

"through wide exposure to that robust exchange of ideas which discovers truth out of a multitude of tongues, [rather] than through any kind of authoritative selection." *Keyishian v Board of Regents,* 385 US 589, 603; 87 S Ct 675; 17 L Ed 2d 629 (1967), *quoting United States v Associated Press,* 52 F Supp 362, 372 (SDNY, 1943), *aff'd* 326 US 1; 65 S Ct 1416; 89 L Ed 2013 (1945).

So too may education be best served through a robust exchange of ideas and a dialogue concerning varying methods of teaching. See Note, *Academic Freedom in the Public Schools: The Right to Teach,* 48 NYU L Rev 1176 (1973). See also Wollett, *The Coming Revolution in Public School Management,* 67 Mich L Rev 1017 (1969).

We do not intend to further limit a board of education's control over its school and curriculum. While the tenure act placed restrictions concerning the discharge of teachers on local boards, it did not deprive local boards of their statutory administrative control over teachers. *Rehberg v Melvindale, Ecorse Township School District No 11,* 330 Mich 541, 547–548; 48 NW2d 142 (1951). See also *Street v Ferndale Board of Education,* 361 Mich 82, 87–88; 104 NW2d 748 (1960). We do, however, intend to require discharges of tenured faculty based on curriculum policy to be rationally and specifically related to a detrimental effect on the school and its students.

Having reversed the Tenure Commission, we order plaintiff's reinstatement with reparation of lost salary pursuant to MCLA 38.103; MSA 15.2003. In accordance with *Shiffer v Board of Education of Gibraltar School District,* 393 Mich

190; 224 NW2d 255 (1974), we remand to the Tenure Commission for determination of the amount of the back-pay award in this case with instructions (i) to deduct from the "salary" plaintiff would have earned all wages she actually earned that she would not have earned if she were employed as a teacher, and (ii) to consider any evidence the school district offers that plaintiff, through exertion of proper efforts, could have earned more.

The burden on the mitigation issue is on the school district, not the teacher.

Affirmed and remanded to the Tenure Commission. Costs to plaintiff.