CLARK v ANN ARBOR SCHOOL DISTRICT

Docket No. 61457. Submitted January 11, 1983, at Lansing.—Decided
December 5, 1983. Leave to appeal applied for.

Jerrell Dean Clark was a drama teacher and forum leader at
Community High School in Ann Arbor for three years prior to
her discharge. Charges of having an unprofessional relationship
with one of her students were brought before the Ann Arbor
School District Board of Education. The evidence established
that Clark had been in a student's apartment several times and
had once stayed overnight, when the student gave her a back
massage. She was seen sitting on the student's mattress at a
time when the student was lying on the mattress in a sleeping
bag while otherwise unclothed. She was observed leaning
against the student at 7:30 a.m. She had allowed the student to
drive her car on several occasions, although the student had no
driver's license. The school board dismissed her. She appealed
and the tenure commission affirmed. She appealed and the
Ingham Circuit Court, Robert Holmes Bell, J., reversed and
ordered reinstatement. The Ann Arbor School District ap-
pealed. *Held:*

A tenured teacher may be dismissed for reasonable and just
cause even where there is no showing that the teacher's con-
duct adversely affected the school, its staff, or the students. The
tenure commission's decision that the conduct constituted rea-
sonable and just cause for dismissal was supported by compe-
tent, material, and substantial evidence.

Reversed.

D. E. HOLBROOK, JR., P.J., dissented. He would hold that a
tenured teacher may not be dismissed for reasonable and just
cause without a showing that the teacher's conduct adversely
affected the school, its staff, or the students and would affirm.

OPINION OF THE COURT

1. SCHOOLS — TENURE — DISMISSAL OF TEACHERS.
   A tenured teacher may be dismissed for reasonable and just cause

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 68 Am Jur 2d, Schools § 183.

even where there is no showing that the teacher's conduct adversely affected the school, its staff, or the students.

DISSENT BY D. E. HOLBROOK, JR., P.J.

2. SCHOOLS — TENURE — DISMISSAL OF TEACHERS.

*A tenured teacher may not be dismissed for reasonable and just cause without a showing that the teacher's conduct adversely affected the school, its staff, or the students.*

*Foster, Swift, Collins & Coey, P.C.* (by *William F. Fahey*), for petitioner.

*Miller, Canfield, Paddock & Stone* (by *James E. Tobin*), for respondent.

Amicus Curiae:

*Linda L. Bruin,* for Michigan Association of School Boards.

Before: D. E. HOLBROOK, JR., P.J., and CYNAR and H. W. MOES,* JJ.

CYNAR, J. Charges were filed with respondent board against petitioner Clark, a tenured teacher, pursuant to Article 4 of the teacher tenure act, MCL 38.101 *et seq.;* MSA 15.2001 *et seq.* Following a hearing, respondent found the charges of an unprofessional relationship with one of her male students had been established and discharged the petitioner. Petitioner appealed to the tenure commission, which affirmed. The circuit court reversed the tenure commission. Respondent appeals as a matter of right.

Petitioner was a drama teacher and forum leader at Community High School for three years prior to her discharge. The forum was a discussion group in which students discussed a variety of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

topics, including personal problems. Community High School is a nontraditional school designed to provide an individualized educational program for its students. Teachers are required to spend much more time with students outside the ordinary school setting than at other schools and one of the school's goals is to develop close contact between teachers and students. Respondent does not dispute that Clark's classroom performance was excellent and she was popular with students.

In the spring of 1975, near the end of her first year of teaching, the principal warned petitioner about her conduct with male students. She denied impropriety. Without challenging her denial, she was advised such conduct would be cause for dismissal. In any event, she was told to avoid not only impropriety but also the appearance of impropriety.

In the fall of 1977, the principal, now deputy superintendent, was again required to deal with petitioner on this subject. A parent was referred to the deputy superintendent by a high school principal. The parent's son, Rob, was a student in petitioner's drama class as well as in her home room class. The parent expressed some very serious concerns about petitioner's relationship with his son. Following further investigation, charges under the tenure act were filed against the petitioner with respondent.

The evidence in support of these charges are summarized as follows:

The charges concern the relationship between petitioner and Rob, a 17-year-old student. Rob's brother, Seth, and Willard, a friend of Seth's (both 14 years old), testified about the incident. In June, 1977, Willard and Seth sneaked into the basement where Rob was living to see if they could "catch

him doing something". Willard testified that he saw petitioner lying partially on top of Rob on Rob's mattress, kissing Rob, when they walked in. Rob was partly covered by this sleeping bag. His chest was bare. Petitioner was fully clothed. Willard described the kiss as a "French" kiss. Seth testified that he entered the door behind Willard and saw Rob and petitioner sitting on Rob's mattress, kissing. He testified that they stopped as soon as the two boys entered. Seth admitted on cross-examination that he did not actually see the kissing because he could only see the back of petitioner's head when he walked in, but that he assumed that that was what they were doing because they were so close together. Seth mentioned the incident to his father, who, he knew, did not like petitioner "a long time after it happened". Seth admitted that he did not get along well with Rob and that they were not fond of each other.

Rob testified that petitioner was sitting near him, but not on the mattress, when Willard and Seth walked in. He testified that petitioner awakened him by knocking on the door and that he let her in. He admitted that he was naked under the sleeping bag. However, he denied that they were kissing. Petitioner also denied that she was kissing Rob when the boys walked in. Richard Churchman, a building contractor, testified that he went into the basement on June 1 or 2, 1977, at about 7:30 a.m. to see if Rob wanted to do some work for him and to pick up some tools kept in the basement. He saw Rob lying on a sleeping bag with a quilt over himself. Petitioner was leaning up against him.

By her own admission, petitioner established the basis for a charge that she had spent a night at

Rob's basement apartment. Petitioner testified that she did not remember Churchman walking in. She testified that Rob and another student, Polly, spent an evening celebrating Polly's birthday at petitioner's home. Later, petitioner drove Polly first and then Rob home. Her car would not start when she was ready to leave Rob's house. Petitioner testified that she was upset over her car and a fight she had had with a friend earlier in the evening, so she went into Rob's apartment. Rob gave her a back massage and she fell asleep. Both were fully dresssed. Petitioner testified that she did not know where Rob slept. Petitioner later testified at the commission hearing that she did not walk the two miles to her home because Rob's apartment was in a bad neighborhood. Petitioner admitted to having been in Rob's apartment two or three times in the summer of 1977.

Rob and petitioner also admitted that they took a two-week trip to the west. They stated they were accompanied by another student for all but the last two days, when they were driving nonstop back to Ann Arbor.

Petitioner testified that she allowed Rob to drive her car on the trip and later in Ann Arbor even though she knew that he did not have a driver's license and was on probation.

Respondent found all of the charges established and voted to discharge petitioner. On appeal, the tenure commission was unable to find sexual misconduct existed between petitioner and Rob. However, the commission found petitioner's actions, viewed in total, displayed a total disregard for her special responsibilities as an educator. Her conduct established a serious breach of her duty to her employer and her students, constituting just and reasonable cause for discharge. The circuit court

reversed on the ground that respondent had not shown any adverse effects, as required under *Beebee v Haslett Public Schools,* 66 Mich App 718; 239 NW2d 724 (1976).

MCL 38.101; MSA 15.2001 provides that a tenured teacher may only be discharged for reasonable and just cause:

"Sec. 1. Discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause, and only after such charges, notice, hearing, and determination thereof, as are hereinafter provided."

The circuit judge stated that, under the *Beebee* case, evidence of adverse effects of a teacher's conduct on students and the schools must be shown not only in cases involving the teacher's classroom performances, but "in every case" including cases of teacher misconduct like the instant case. Since the record in this case, the circuit judge observed, "is void of any proof that Ms. Clark's actions had a deleterious outcome on the students or other teachers", reversal of the tenure commission's decision was required.

In *Beebee,* the Court of Appeals stated that it intended to require "discharges of tenured faculty based on curriculum policy to be rationally and specifically related to a detrimental effect on the school and its students". 66 Mich App 728. In *Beebee,* a tenured teacher was discharged for what the Court of Appeals found to be a disagreement with the school district over teaching philosophy. The Court of Appeals held that the school district must show that the teacher's activities adversely affected students, other teachers, and the school.

"Given the presumption of fitness engendered by tenure status, 'just and reasonable cause' can be shown

only by significant evidence proving that a teacher is unfit to teach. Because the essential function of a teacher is the imparting of knowledge and of learning ability, the focus of this evidence must be the effect of the questioned activity on the teacher's students. Secondarily, the tenure revocation proceeding must determine how the teacher's activity affects other teachers and school staff." *Beebee, supra,* p 724.

We note that petitioner's assumption that *Beebee* requires proof of adverse effects of the questioned activity in all tenure cases is not necessarily a valid assumption. We are convinced that the Court did not intend to lay down the flat rule urged by plaintiff and applied by the trial court.

Further, even assuming that the Court of Appeals was laying down a broad rule requiring a showing of adverse effects in all tenure cases, the continuing validity of the rule is doubtful after *Beebee*'s reversal on appeal by the Supreme Court. See *Beebee v Haslett Public Schools (After Remand),* 406 Mich 224; 278 NW2d 37 (1979). In a unanimous opinion, the Supreme Court disagreed with the Court of Appeals characterization of the basis of the tenure commission's decision as resting on the school board's disagreement with Beebee's teaching philosophy. *Beebee (After Remand), supra,* p 229. The Supreme Court identified the issue as "plaintiff's failure to implement her philosophy in a safe and orderly fashion". *Beebee (After Remand), supra,* p 230. The Court reviewed the record to determine whether there was competent, material, and substantial evidence to support the tenure commission's finding that there was reasonable and just cause to uphold Beebee's discharge. The Court found that Beebee's classroom was lacking in safety and control and upheld the dismissal. The Supreme Court did not refer to the

"adverse effects" rule enunciated by the Court of Appeals. While it is questionable what, if anything, is left of the Court of Appeals "adverse effects" rule, at a minimum it can be said that it is not the broad rule urged by petitioner.

In *Sutherby v Gobles Bd of Ed,* 73 Mich App 506; 252 NW2d 503 (1977), *remanded* 401 Mich 833 (1977) (decided after the Court of Appeals decision in *Beebee* but before the decision by the Supreme Court in that case), a panel of this Court distinguished *Beebee,* noting that in some cases adverse effects can be presumed.

"In *Beebee, supra,* the questioned activity could not automatically be presumed to have a detrimental effect on the students; as a matter of fact, defendant school board there admitted that the affected students were no worse in achievement level than the rest. 66 Mich App 718, 722. Here, however, the questioned activities and the record concern a consistent pattern of violation of rules and regulations that clearly are within the powers of the school board and the administration. MCL 340.1 *et seq.;* MSA 15.3001 *et seq.* Such a pattern of violation, showing persistent insubordination to proper authority, can be presumed to have an adverse effect on the students, teachers, and staff of a school. This record substantiates that presumption. To remand for further findings would elevate form over substance." *Sutherby, supra,* pp 512-513.

The Court of Appeals in *Beebee,* upon finding the decision in *Morrison v State Bd of Ed,* 1 Cal 3d 214; 82 Cal Rptr 175; 461 P2d 375 (1969), to be very instructive, concurred in its rationale and adopted its guidelines. In the California case, it was held that the terms "immoral" and "unprofessional conduct", as used in the California Education Code, are not void for vagueness if the terms are interpreted to apply to conduct indicating a

teacher is not fit to teach. Morrison's teaching credentials were revoked upon a finding that the teacher's participation in homosexual activity constituted immoral and unprofessional conduct. The California Supreme Court ruled that revocation of a teacher's credentials for immoral or unprofessional conduct is permissible under the statute only if school officials can demonstrate a clear connection between the teacher's activity and the employment-related requirements of the teacher. Nonconventional sexual behavior per se is not sufficient to establish unfitness to teach. To revoke a teacher's credentials for such conduct, it must be shown that the teacher's retention in the profession poses a significant danger of harm to student, school, employees, or others who might be affected by his or her actions as a teacher. *Morrison, supra,* p 235.

An analysis and discussion of the case supporting the court's ruling concludes with this comment:

"Unquestionably, teachers may be dismissed from the profession if it can be shown that they are likely to seduce or engage in forbidden sexual activity with their students." Willett, *Unfitness To Teach: Credential Revocation and Dismissal for Sexual Conduct,* 61 Cal L Rev 1442, 1461 (1973).

Following the *Morrison* decision, another California case demonstrates that a teacher may be dismissed on the basis of his or her sexual misconduct with a student. A junior college teacher's behavior was held to constitute immoral conduct indicating unfitness to teach and warranting dismissal when the teacher was found with a female student in a parked car. *Board of Trustees v Stubblefield,* 16 Cal App 3d 820; 94 Cal Rptr 318

(1971). A deputy sheriff discovered the teacher at night with a student, the teacher's pants were lowered, the student nude from the waist up with her pants unzipped and open at the waist. In addition, the teacher tried to get away and led the deputy on a high speed chase. The court in that instance distinguished the *Morrison* decision on the ground that the potential for misconduct with a student was manifested in this situation:

"The clear import of that *[Morrison]*, then, is that a teacher may be discharged or have his certificate revoked on evidence that either his conduct indicates a potential for misconduct with a student or that his conduct while not necessarily indicating such a potential, has gained sufficient notoriety so as to impair his on-campus relationships.

"There is no requirement that both the potential and the notoriety be present in each case." *Stubblefield, supra,* p 826.

The factual circumstances in the two cases are different. Particular attention is given to the status of the parties. While *Morrison* dealt with two consenting adults, *Stubblefield* involved a teacher and a student. The court concluded:

"It would seem that, as a minimum, responsible conduct upon the part of a teacher, even at the college level, excludes meretricious relationships with his students". *Stubblefield, supra,* p 825.

The tenure commission's determination that petitioner maintained an unprofessional relationship with her student is supported by competent, material, and substantial evidence on the record as a whole. Petitioner admittedly was in Rob's apart-

ment several times including one time overnight. By petitioner's own account, Rob gave her a back massage at the time of this latter visit. Petitioner was seen by Seth and Willard sitting near Rob on his mattress. Rob admittedly had no clothes on underneath his sleeping bag. Petitioner was seen leaning against Rob on Rob's mattress at 7:30 a.m. Petitioner also allowed Rob to drive her car, although he did not have a driver's license, on their trip out west and locally on several occasions.

The tenure commission's decision that petitioner's actions were reasonable and just cause for her discharge is supported by competent, material, and substantial evidence.

Accordingly, the decision of the circuit court is reversed and the decision of the tenure commission is affirmed.

H. J. MOES, J., concurred.

D. E. HOLBROOK, JR., P.J. *(dissenting)*. I respectfully dissent. As I view this case, the principal issue is whether a tenured teacher may be dismissed for reasonable and just cause where it is not shown on the record that said teacher's conduct adversely affected the school, its staff, or the students. I would hold that the circuit court properly relied on *Beebee v Haslett Public Schools,* 66 Mich App 718, 724, 726; 239 NW2d 724 (1976), *rev'd on other grounds* 406 Mich 224; 278 NW2d 37 (1979). In my opinion, the court correctly determined that reasonable and just cause for petitioner's dismissal had not been shown since the record was devoid of proof that petitioner's activities adversely affected teachers or other students. Accordingly, I would affirm the circuit court's opinion and order.