MILLER v GRAND HAVEN BOARD OF EDUCATION

Docket No. 83056. Submitted April 3, 1986, at Lansing. Decided May 5, 1986. Leave to appeal applied for.

 The Board of Education of the Grand Haven Public Schools, in December, 1979, suspended Michael Miller, a tenured music teacher, without pay for the remainder of that school year, having determined that Miller had exposed himself in an indecent manner to certain of his female students. Miller filed a petition with the State Tenure Commission. Following an evidentiary hearing, the commission affirmed the determination of the school board. Miller sought review of the commission's determination in the Ingham Circuit Court. The circuit court, Thomas L. Brown, J., affirmed. Miller appealed. *Held:*

 1. Where, as here, the alleged misconduct of a teacher involves acts undertaken in the teaching setting or involves students and involves an act that is obviously inappropriate for a teacher to engage in, there is no need that it be alleged and shown that the alleged conduct, if proven, would have an adverse effect upon the students or other teachers.

 2. The tenure commission properly determined that the students giving testimony about Miller's conduct were credible.

 3. There was competent, material and substantial evidence on the whole record to support the tenure commission's findings.

 Affirmed.

1. Schools — Tenure — Disciplining of Teachers — Adverse Effect Doctrine.

 The adverse effect of a tenured teacher's behavior on the teacher's students and other teachers need not be pled and estab-

REFERENCES

Am Jur 2d, Schools §§ 149 *et seq.*

Sexual conduct as ground for dismissal of teacher or denial or revocation of certificate. 78 ALR3d 19.

Improper or immoral conduct toward female patients as ground for disciplinary measure against physician or dentist. 15 ALR3d 1179.

Revocation of teacher's certificate for moral unfitness. 97 ALR2d 827.

lished in every case before a school board can discipline a teacher by discharge or demotion for reasonable and just cause; rather, the adverse effect of a teacher's behavior may be used to justify disciplinary action and may be necessary as a practical matter to establish reasonable and good cause in cases where the teacher is being disciplined because of a conflict between the teacher's teaching style and that espoused by the school administration or where the disciplining is for conduct which occurred outside of the teaching setting and which did not involve students (MCL 38.101; MSA 15.2001).

2. SCHOOLS — TENURE — DISCIPLINING OF TEACHERS — ADVERSE-EFFECT DOCTRINE.

A teacher who engages in conduct which occurs on the school grounds during working hours or otherwise involves students and which is obviously inappropriate is subject to disciplinary action by a school board without the adverse effect of that conduct being pled or shown.

3. SCHOOLS — TENURE — TEACHER TENURE COMMISSION — FINDINGS OF FACT.

Findings of fact by the State Tenure Commission must be supported by competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28; MCL 24.306[1]; MSA 3.560[206][1]).

4. APPEAL — TEACHER TENURE COMMISSION — WITNESSES — CREDIBILITY.

The Court of Appeals will give substantial weight to the State Tenure Commission's determinations of credibility of testimony where the commission had the opportunity to observe the witnesses firsthand.

*Foster, Swift, Collins & Coey, P.C.* (by *Arthur R. Przybylowicz),* for petitioner.

*Scholten, Fant & Marquis* (by *Ronald A. Bultje),* for the Grand Haven Board of Education.

Before: GILLIS, P.J., and R. B. BURNS and G. B. FORD,* JJ.

R. B. BURNS, J. Petitioner, Michael Miller, ap-

* Recorder's court judge, sitting on the Court of Appeals by assignment.

peals following the circuit court's affirmance of the State Tenure Commission's determination that Miller was disciplined for just cause by respondent Grand Haven Board of Education. Our review focuses on the questions of whether an "adverse effect" of a teacher's misconduct must be pled and established and, in any event, whether the commission's findings were supported by competent, material, and substantial evidence on the whole record.

Miller has taught music in the Grand Haven Public Schools since 1966, both in classroom and individual instruction settings. This case arises from five incidents involving four female students who were in the fifth or sixth grades at the time. All incidents occurred during individual instruction sessions.

In the spring of 1979, student M. T. reported to the school principal that Miller had exposed himself to her during a violin lesson. According to M. T., Miller walked away from her during the lesson and went into an adjoining workroom. She glanced into the workroom, which she could see from her chair, and saw Miller unbuckle and unzip his pants and she immediately turned away. She reported the incident to her parents and the principal. During the principal's investigation, Miller stated that he went into the workroom to tuck in his shirt and was unaware that M. T. was in the room. The matter was dropped.

On October 1, 1979, another student K. O., reported that Miller exposed himself to her upon her entry into the classroom. She reported the incident to her parents and the school, along with an incident which had occurred the previous spring which K. O. had not reported. In the earlier incident, Miller was in or near the doorway of the aforementioned workroom, in a squatting position,

with his trousers and undershorts down to his knees, fully exposing himself to K. O. Miller was suspended with pay during the subsequent investigation, which was made in October, 1979.

The investigation resulted in two other female students making accusations against Miller. One, J. H. reported that in 1975, when she was a fifth-grader, she arrived at the music room for her lesson and observed Miller standing in the middle of the room, with his trousers and undershorts pulled down below his knees, fully exposing his genitalia to J. H. He asked her to leave the room a moment. She did, he reclothed himself, and her music lesson commenced.

The other incident uncovered in the investigation involved S. C., who, in 1978 as a fifth-grader, saw Miller step behind a "blind"[1] and lower his pants. S. C. could only see the lower part of his legs. She did not report the incident for fear that Miller would get into trouble.

Miller testified on his own behalf that the S. C., J. H. and the first K. O. incidents never happened. He stated that the M. T. and second K. O. incidents were the result of the girls' mistaken impression. In both cases, Miller claims he had merely loosened his pants to tuck in his shirt and thought that he was doing so in privacy.

The board found the incidents to have been sufficiently proven so as to justify disciplining Miller. In late December, 1979, by a four to three vote, Miller was suspended without pay for the remainder of the school year. The three members in the minority agreed with the majority's conclusions, but would have voted to discharge.

On appeal, Miller raises a number of issues related to the adverse-effect doctrine. There is,

---

[1] Described as either a portable chalkboard or bulletin board.

however, some question as to whether that doctrine remains viable. We begin with the tenure statute. MCL 38.101; MSA 15.2001 provides that a tenured teacher may be discharged or demoted "only for reasonable and just cause." This Court, in *Beebee v Haslett Public Schools,* 66 Mich App 718, 724; 239 NW2d 724 (1976), rev'd 406 Mich 224; 278 NW2d 37 (1979), interpreted this as a requirement to show "adverse effect":

> Given the presumption of fitness engendered by tenure status, "just and reasonable cause" can be shown only by significant evidence proving that a teacher is unfit to teach. Because the essential function of a teacher is the imparting of knowledge and of learning ability, the focus of this evidence must be the effect of the questioned activity on the teacher's students. Secondarily, the tenure revocation proceeding must determine how the teacher's activity affects other teachers and school staff.

The Supreme Court granted leave and subsequently remanded to the tenure commission to make findings of fact and conclusions of law, while retaining jurisdiction. *Beebee v Haslett Public Schools,* 401 Mich 954 (1977). The Court thereafter reversed this Court's decision, concluding that "there exists competent, material and substantial evidence" to justify the plaintiff's discharge. *Beebee v Haslett Public Schools (After Remand),* 406 Mich 224, 234; 278 NW2d 37 (1979).

In *Beebee,* the teacher was discharged for failure to properly control and supervise her kindergarten classroom, for being an ineffective teacher, for failure to follow administrative directions, and for an inability to cooperate with her fellow teachers. 406 Mich 227. The tenure commission upheld the discharge, the circuit court reversed the decision of

the tenure commission, this Court affirmed the circuit court's decision and the Supreme Court reversed the decision of this Court and reinstated the decision of the tenure commission. Although the Supreme Court did not discuss the adverse-effect doctrine, it did note that it disagreed with this Court's characterization of the case as involving a disagreement on teaching philosophy. 406 Mich 229. Rather, the Supreme Court viewed the issue as one of the plaintiff's failure to properly implement her teaching philosophy. 406 Mich 231. There was a hint that the case might be viewed differently if academic freedom were involved. *Id.*

To add further confusion to the matter, the Supreme Court in *Detroit Bd of Ed v Parks,* 417 Mich 268, 281; 335 NW2d 641 (1983), suggested that the adverse effect doctrine might have continued validity in the proper cases:

> The reasonable and just cause standard of the teacher tenure act has been construed to forbid discharge unless the activity complained of bears a rational and specific relationship to a detrimental effect on the school and the students. See *Beebee v Haslett Public Schools,* 66 Mich App 718; 239 NW2d 724 (1976), rev'd on other grounds 406 Mich 224; 278 NW2d 27 (1979).

While it is noteworthy that the Supreme Court considers our opinion in *Beebee* to have been reversed on other grounds, the statement in *Parks* is mere dicta as the Court concluded that the tenure act was not applicable to that case since the teachers involved were discharged for failure to pay a union fee. Rather, the Court concluded, the discharge came within the provisions of the public employment relations act.[2] 417 Mich 283.

[2] MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.*

However, subsequent to *Parks,* this Court, in *Clark v Ann Arbor School Dist,* 130 Mich App 681; 344 NW2d 48 (1983), concluded that the adverse-effect doctrine had dubious continuing validity following the Supreme Court's decision in *Beebee, supra.* 130 Mich App 687. Rather, the *Clark* Court concluded that, at most, the adverse-effect doctrine was a limited, rather than broad, rule. 130 Mich App 688. The *Clark* majority refused to apply the doctrine in that case where the teacher had been discharged for having engaged in an "unprofessional relationship" with a student. However, D. E. HOLBROOK, JR., J., writing in dissent, would have applied the adverse-effect doctrine and reversed the discharge. 130 Mich App 691. Neither the majority nor the dissent considered *Parks, supra.*

It is from this background that we must determine the continuing viability and applicability of the adverse-effect doctrine. To do so we, like the *Clark* Court, will look to its beginnings. The adverse-effect doctrine came to Michigan, via *Beebee, supra,* from California. Specifically, from the California Supreme Court's decision in *Morrison v State Bd of Ed,* 1 Cal 3d 214; 82 Cal Rptr 175; 461 P2d 375 (1969).

In *Morrison,* a teacher's teaching credentials were revoked after having engaged in a consensual, noncriminal physical relationship of a homosexual nature with an adult male. The disciplinary action against the petitioner was premised upon the immoral and unprofessional conduct or moral turpitude provisions of the California educational code. It was in construing this statutory language that *Morrison* stated an adverse-effect requirement:

> We therefore conclude that the Board of Education cannot abstractly characterize the conduct in

this case as "immoral," "unprofessional," or "involving moral turpitude" within the meaning of section 13202 of the Education Code unless that conduct indicates that the petitioner is unfit to teach. *In determining whether the teacher's conduct thus indicates unfitness to teach the board may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers,* the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers. These factors are relevant to the extent that they assist the board in determining a teacher's fitness to teach, i.e., in determining whether the teacher's future classroom performance and overall impact on his students are likely to meet the board's standards. [1 Cal 3d 229-230; 82 Cal Rptr 186-187. Footnotes omitted, emphasis added.]

It was this language from *Morrison* that the *Beebee* Court relied upon in establishing the adverse-effect doctrine in Michigan. 66 Mich App 725-726.

We do note that the California Court of Appeals declined to apply the *Morrison* rationale in *Board of Trustees v Stubblefield,* 16 Cal App 3d 820; 94 Cal Rptr 318 (1971). In *Stubblefield,* a junior college instructor became involved in a meretricious relationship with a female student. Discipline followed the discovery of the two by a police officer in a parked car, both being partially undressed. The *Stubblefield* Court noted that, unlike in *Morrison,* the teacher's conduct directly involved a student. 16 Cal App 3d 826-827; 94 Cal Rptr 322-323.

From these cases, we conclude that, while the adverse-effect doctrine remains viable in Michigan, it does not have the broad applicability that Miller suggests. Rather than being a requirement that school boards are required to meet in all instances, it is a permissible basis for discipline. That is, a school board may justify a disciplinary action against a teacher by showing that the teacher's conduct or attitude has an adverse effect on the students, staff or institution. Indeed, in some instances the showing of adverse effect may be the only available basis for discipline.

It may well be appropriate to expect a showing of adverse effect in cases of discipline arising from disputes centering around pedagogical or personal philosophies or courses of conduct. The primary purpose of the tenure act is to maintain a competent teaching staff, free from political and personal interference. *Parks, supra,* p 281. Thus, where there is a dispute between a teacher and an administrator over the teacher's teaching style, the school would be hard pressed to justify disciplinary action absent a showing of adverse effect.

Similarly, where a teacher's conduct, outside of the school and not involving students, is the basis of discipline, as was the case in *Morrison,* there is a serious question as to whether the public school may take action against the teacher without showing that that conduct has an adverse effect upon the educational process. As noted by the *Morrison* Court, the United States Supreme Court has held a number of times that government employment may not be denied based upon factors unrelated to that employment. 1 Cal 3d 234-235; 82 Cal Rptr 191. A showing of adverse effect may be necessary in order to protect the teacher against discipline based upon the personal bias or prejudice of an

administrator for reasons unrelated to classroom performance or conduct.[3]

We caution, however, that our opinion should not be read as *requiring* a showing of adverse effect in either of those situations. Rather, we are merely skeptical that a school board could show "reasonable and just cause"[4] for discipline absent such a showing.

However, there is a third area in which discipline may result: namely, teacher misconduct in the school or involving students. This is the situation presented in *Stubblefield, supra,* and *Clark, supra,* as well as the case at bar. We are of the opinion that where a teacher's conduct occurs on school grounds during working hours, or otherwise involves students, and is obviously inappropriate, disciplinary action may be taken without a pleading or showing of adverse effect.

In this case, the impropriety of Miller's conduct is obvious to any rational observer. We are not faced with a question of pedagogical philosophy

[3] See, e.g., Dressler, *Survey of School Principals Regarding Alleged Homosexual Teachers in the Classroom: How Likely (Really) Is Discharge?,* 10 Dayton L R 599 (1985). Therein, Professor Dressler reports the results of a survey in which high school and junior high school principals indicated the circumstances under which they would seek license revocation of a homosexual teacher. Most principals would require that the teacher engage in some form of untoward or notorious conduct prior to seeking discipline. However, a significant minority would seek discipline based upon status as a homosexual regardless of any effect on the students, or even knowledge by students or staff of the teacher's homosexuality. The comments by principals suggest that such action may be based upon personal bias by the administrator. *Id.,* p 607. This would seem to be the problem addressed by the *Morrison* Court in requiring adverse effect. That is, discharge based solely on personal bias would be prevented. Rather, an adverse effect would have to be shown. Although the question of homosexual teachers is controversial, and indeed may ultimately prove to be an area in which this Court will not extend tenure protection, the principle applies in other areas. For example, a difference in religious preference could possibly inflame an administrator's bias into seeking discharge.

[4] MCL 38.101; MSA 15.2001.

nor of private conduct not involving students. Rather, we are faced with a situation in which Miller, an elementary school music teacher, exposed himself on a number of occasions over the course of at least four years to various female students. This conduct, in fact, constitutes a criminal offense.[5] Moreover, we can think of no basis upon which Miller's conduct could be either justified or excused. In short, Miller's conduct formed a sufficient basis for the board's action in suspending him.[6]

Finally, we must consider Miller's argument that the commission's findings were not supported by competent, material and substantial evidence on the whole record. See Const 1963, art 6, § 28; MCL 24.306(1); MSA 3.560(206)(1); *Cook v Sturgis Bd of Ed,* 144 Mich App 427; 375 NW2d 740 (1984).

Miller's sole basis of attack upon the commission's findings is that two of the four students who were witnesses were not credible. However, we will not ignore the commission's determinations of credibility where it had the opportunity to observe the witnesses firsthand. See *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116; 223 NW2d 283 (1974).

With respect to J. H., Miller argues that the board found her testimony incredible and, therefore, so should have the commission. However, Miller misstates the board's conclusion. The board found J. H.'s testimony to be truthful, but found it to be insufficient to prove the allegations.

Miller also challenges the testimony of K. O., arguing that it was self-contradictory. The commission rejected this argument:

[5] MCL 750.335a; MSA 28.567(1) (indecent exposure).
[6] In fact, we believe that the board would have been justified in discharging Miller as the minority urged.

Likewise, we do not find appellant's challenge to student K. O.'s credibility convincing. Appellant asserts that her testimony changed between the board hearing and the hearing before this Commission with respect to whether or not she saw appellant's penis. The discrepancy in her testimony is more apparent than real, dealing, in essence, with the extent to which appellant's genitals were visible as opposed to the extent to which she focused her attention on what was visible. We will not discount her testimony on this basis. [Citations to record omitted.]

We do not find that the commission erred in finding the students' testimony to be credible. There was competent, material and substantial evidence on the whole record to support the commission's findings.

Affirmed. Costs to appellee.