BARCHESKI v BOARD OF EDUCATION OF GRAND RAPIDS
PUBLIC SCHOOLS

Docket No. 90039. Submitted May 12, 1987, at Lansing. Decided
August 18, 1987. Leave to appeal applied for.

Robert Barcheski, a tenured teacher employed by the Grand
Rapids Public Schools, was discharged by the Board of Educa-
tion of the Grand Rapids Public Schools following a hearing on
charges regarding misconduct involving two female students.
Barcheski appealed from that decision to the State Tenure
Commission. A majority of the tenure commission members
voted to reinstate Barcheski. Subsequently, on the board of
education's petition for review in the Kent Circuit Court, the
tenure commission's order was reversed. Barcheski then ap-
pealed to the Court of Appeals which affirmed. Unpublished
opinion per curiam, Docket No. 47481, decided August 7, 1981.
Barcheski then sought leave to appeal to the Supreme Court
which, in lieu of granting leave to appeal, reversed in part the
judgment of the Court of Appeals and the Kent Circuit Court
and remanded the case to the tenure commission for reconsid-
eration and issuance of a new opinion in conformity with its
order. 413 Mich 940 (1982). The parties filed briefs on the
merits and oral arguments were held. The tenure commission
did not hold new fact-finding hearings, choosing instead to rely
on testimony elicited in the earlier hearings. The composition
of the tenure commission had changed since the original deci-
sion had been reached. The tenure commission then reversed
itself and ruled that petitioner's discharge was based on reason-
able and just cause. On Barcheski's petition for review in the
Ingham Circuit Court, the court, James R. Giddings, J., af-
firmed the tenure commission's ruling. Barcheski appeals there-
from as of right.

The Court of Appeals held:

1. The tenure commission did not exceed the scope of the
Supreme Court's remand instructions which required the com-

REFERENCES

Am Jur 2d, Public Officers and Employees §§ 14, 154 et seq.; 219 et
seq.
Who is "teacher" for purposes of tenure statute. 94 ALR3d 141.

mission to issue a new opinion after taking into account the unchanged portions of the testimony of one of the students.

2. The tenure commission's findings, that Barcheski invited the two students to a party, that the two students drank beer and smoked marijuana in Barcheski's presence at the party and that Barcheski took one of the students home alone in his car after leaving the party, are supported by substantial, material and competent evidence.

3. Barcheski was adequately put on notice that driving the student home alone constituted by itself a basis for a charge of improper or wrongful conduct which could properly be considered in deciding whether a penalty would be appropriate.

4. The tenure commission did not err in admitting evidence regarding events which allegedly took place while Barcheski and the two students were riding in Barcheski's friend's car immediately upon leaving the party and before Barcheski drove the student home alone.

Affirmed.

1. COURTS — REMAND — ACTION ON REMAND.

A lower court on remand normally can take any action as law and justice may require so long as it is not inconsistent with the instructions or judgment of the remanding court.

2. APPEAL — STATE TENURE COMMISSION.

The Court of Appeals reviews findings of the State Tenure Commission in appeals therefrom to determine whether the findings are supported by competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28; MCL 24.306[1][d]; MSA 3.560[206][1][d]).

*Foster, Swift, Collins & Coey, P.C.* (by *Arthur R. Przybylowicz*), for petitioner.

*Farr & Oosterhouse* (by *William S. Farr*), for the Board of Education of the Grand Rapids Public Schools.

Before: DANHOF, C.J., and HOOD and J. P. SWALLOW,* JJ.

PER CURIAM. This case involves a challenge to

* Circuit judge, sitting on the Court of Appeals by assignment.

the discharge of a tenured teacher employed by the Grand Rapids Public Schools. In an order dated January 2, 1986, the Ingham Circuit Court affirmed a June 30, 1983, ruling of the State Tenure Commission that the discharge was based on reasonable and just cause. We affirm.

In order to place this case in perspective, it is necessary briefly to recount the case's eleven-year procedural history. Petitioner, Robert Barcheski, obtained status as a tenured teacher in the Grand Rapids Public Schools at the close of the 1971-72 school year. On October 18, 1976, the Board of Education of the Grand Rapids Public Schools voted to proceed on three charges brought against petitioner pursuant to Article IV of the teachers' tenure act, MCL 38.101 *et seq.*; MSA 15.2001 *et seq.* Those charges were as follows:

> 1. That on or about August 10, 1976, Mr. Barcheski invited two female members of his driver education class to a party to be held on Friday night, August 13, 1976, the night before the raft race.
> 2. The two female students attended the party and drank beer and smoked pot during the evening in the presence of Mr. Barcheski.
> 3. Mr. Barcheski took one of the female students, Mary . . ., home in his automobile after leaving the party. Mary . . . was 15 years of age at the time in question. On the way to the residence of Mary . . ., Mr. Barcheski parked his automobile and had sexual intercourse with [her] in his automobile.

On February 15, 1977, after an extensive closed-door tenure hearing, the board of education found that the first two charges against petitioner had been proven and that the evidence was "conflicting and inconclusive" regarding the third charge.

Evaluating the charges together, the board of education concluded that petitioner's discharge was supported by reasonable and just cause. Board member David E. Hartman, in a separate concurring opinion, noted that even though the evidence concerning the third charge was conflicting, other evidence supported the conclusion that petitioner's actions "exhibited extremely poor judgment and invited charges and claims of improper conduct." The "other evidence" cited by Hartman included petitioner's unaccompanied escorting home of a fifteen-year-old female student who was intoxicated and had been smoking marijuana, and his "kissing and other improprieties" of the student while in the back seat of a car. Petitioner appealed the decision of the board of education to the tenure commission.

Additional testimony was taken before the tenure commission on March 2 and 3, 1978, before four of the five tenure commission members. At that time, the tenure commission included Marian Gibson, Donald A. Schoenrath, William L. Austin, Leonard M. Porterfield, and Nathaniel Stroup (who was not in attendance at petitioner's hearing). On August 31, 1978, before a decision in petitioner's case was rendered, the composition of the tenure commission changed. Members Austin, Porterfield, and Stroup were replaced by James Blackburn, Mathew Prophet, and Nancy Herlein. In a decision and order dated November 30, 1978, a majority of the tenure commission, comprised of members Blackburn, Prophet, and Schoenrath, voted to reinstate petitioner, with Marian Gibson dissenting. Nancy Herlein did not participate in the decision.

Subsequently, on the board of education's petition for review in the Kent Circuit Court, the tenure commission's order was reversed on the

basis of two grounds: the tribunal's findings were not supported by competent, material and substantial evidence sufficient to order reinstatement of petitioner, and the procedure used by the tribunal in reaching its decision was improper. This Court affirmed two-to-one the circuit court's reversal of the tenure commission's decision. *Grand Rapids Bd of Ed v Barcheski,* unpublished opinion per curiam of the Court of Appeals, decided August 7, 1981 (Docket No. 47481). The Supreme Court, in lieu of granting leave to appeal, reversed in part the judgments of this Court and the Kent Circuit Court and remanded the case to the tenure commission "for reconsideration and issuance of a new opinion" in conformity with its order. 413 Mich 940 (1982).

On remand, the parties filed briefs on the merits and oral arguments were conducted on February 18, 1983. By this time, the composition of the tenure commission had changed again. Commissioner Gibson was the only member who participated in both the original and remand decisions. Commissioner Porterfield, who was a member at the time of the original tenure commission hearing but was no longer on the commission at the time of the original decision, was back on the commission. Commissioner Herlein did not participate in the original decision, but did participate in the remand decision. New commissioners after the remand were Joan Young and Jon Schuster. Choosing to rely on testimony elicited in the earlier hearings, the tenure commission did not hold new fact-finding hearings.

In a decision and order dated June 20, 1983, the tenure commission reversed itself and ruled that petitioner's discharge was based on reasonable and just cause. Young and Schuster concurred in Gibson's majority opinion, and Porterfield and Herlein

dissented. On Barcheski's petition for review, the Ingham Circuit Court affirmed the tenure commission's ruling, from which petitioner now appeals as of right. On appeal, petitioner raises several issues, which we address seriatim.

First, petitioner argues that the tenure commission exceeded the scope of the Supreme Court's remand instructions by issuing a wholly new decision and not merely considering the effect of those portions of the testimony of a witness, "Wendy," the other female student who was allegedly invited by petitioner to the August 13, 1976, party, which remained unchanged between the board of education hearing and the tenure commission hearing. The tenure commission had given little weight to Wendy's testimony because portions of her testimony had changed in petitioner's favor only after petitioner had numerous conversations and meetings with her. Essentially, petitioner argues that the tenure commission's task on remand was limited to a determination of whether the unchanged portions of Wendy's testimony would affect the favorable result previously reached, and not to a review of the case de novo. We disagree.

The instructions of the Supreme Court for treatment of this case on remand to the tenure commission were as follows:

> [I]n lieu of granting leave to appeal, we reverse in part the judgments of the Court of Appeals and the Kent County Circuit Court and remand the case to the State Tenure Commission for reconsideration and issuance of a new opinion in conformance with this order. The Court of Appeals and the Kent County Circuit Court erred when, having concluded that the State Tenure Commission erred in disregarding the unchanged portions of the testimony of witness [Wendy], said courts made findings of facts based upon that testimony. The

courts should have remanded the case to the State Tenure Commission with directions that it reconsider its decision and issue a new opinion taking into account those portions of witness [Wendy's] testimony which were unchanged between the hearing before the board of education and the hearing before the State Tenure Commission. *Beebee v Haslett Public Schools (After Remand)*, 406 Mich 224 (1979); *Long v Board of Education, Dist No 1, Fractional, Royal Oak Twp*, 350 Mich 324 (1957). [413 Mich 940 (1982).]

On its face, the remand order requires the tenure commission to issue a "new opinion" after taking the unchanged portions of Wendy's testimony into account. This is precisely what the commission did. Commissioner Gibson explicitly relied on a portion of her unchanged testimony in support of her opinion, and Commissioners Young and Schuster, in their concurring opinion, stated that their decision was "predicated upon the unchanged portion of Wendy's testimony considered in the gestalt of [the] three charges lodged against [petitioner]." Normally, a lower court on remand can take any action as law and justice may require so long as it is not inconsistent with the instructions or judgment of the remanding court. *Sokel v Nickoli*, 356 Mich 460, 464; 97 NW2d 1 (1959); *Meyering v Russell*, 85 Mich App 547, 552; 272 NW2d 131 (1978), lv den 406 Mich 866 (1979). Applying this rule to the tenure commission in this case, we detect no error. In addition, we agree with the trial judge who noted that, under the circumstances, the tenure commission had no alternative but to conduct a de novo hearing. The trial judge reasoned:

To adopt appellant's argument would prejudice the Board's effort to secure an impartial decision from the Commission. The original decision [of the

tenure commission] was vacated on the basis that it was not supported by substantial, material and competent evidence, and that the Board had denied due process. Neither of these holdings by [the Kent County Circuit Court] was disturbed by the Supreme Court. Instead, the Supreme Court reversed "in part" and [its] reversal was predicated only on the lower court's invasion of the commission's exclusive fact finding [sic] power . . . . Simply put, there was no viable decision remaining against which Wendy['s] unchanged testimony could be reflected. Under the circumstances, the Commission had no alternative but to reconsider the appeal in light of the entire recording [,] excluding of course the inconsistent portions of [Wendy's] testimony.

Second, petitioner argues that none of the tenure commission's three findings is supported by substantial, material and competent evidence. Our review of the tenure commission's findings is limited to determining from the record whether the proof received by the school board or the tenure commission or both supports the findings at which the tenure commission arrived. The precise standard is one of competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 24.306(1)(d); MSA 3.560(206)(1)(d); *Comstock Public Schools v Wildfong*, 92 Mich App 279, 284-285; 284 NW2d 527 (1979); *Miller v Grand Haven Bd of Ed*, 151 Mich App 412, 422; 390 NW2d 255 (1986), lv den 426 Mich 881 (1986). Our review of the record discloses that the tenure commission's findings are supported by substantial, material and competent evidence, and we therefore affirm.

Regarding the first finding, i.e., that petitioner invited two female members of his driver's education class to a party, Commissioner Gibson's majority opinion relies heavily on the credibility of

one of petitioner's students, "Mary." Mary admitted to the board of education that she had originally misled board investigators in her account of the party and petitioner's invitation, but stated that shortly thereafter she told them the truth. Mary testified before the board of education that on about August 10, 1976, she discussed an upcoming raft race with petitioner and that petitioner told her that he was going to a party on Friday, August 13, 1976, the night before the raft race. She stated that petitioner invited her and Wendy to attend the party and that the three of them talked about the party "every day" that week. At the tenure commission hearing, Mary's testimony concerning petitioner's alleged invitation was substantially the same as that offered before the board of education.

Wendy's testimony before the board of education concerning the alleged invitation supplemented that offered by Mary. Wendy stated that she came upon petitioner and Mary as they were talking about the party and heard petitioner ask Mary, "So, you'll be there?" Wendy said that petitioner took a driver's training book from her hand, jotted down the phone number of a social hall he frequented, and told the girls that if they could not find the party they should give him a call. Wendy also testified that, prior to the board of education hearing, petitioner had called her in an attempt to persuade her to falsify her testimony by stating that petitioner's wife was not at the party and that petitioner had not given the girls a ride home from the party. At the tenure commission hearing, however, Wendy recanted the bulk of her earlier testimony, insisting that she and Mary had never been invited to the party. She testified that the telephone number that petitioner had written down on her driver's training book was not given

for the purpose of helping the girls to locate the party, but rather to give them someone to call if they were stranded after driver's training class. When asked to explain the reason for the change in her testimony, Wendy stated that her earlier testimony was based on what Mary told her had happened rather than her own observations. Wendy explained that she had matched her story with Mary's because she felt sorry for her friend, but conceded that, since the board of education hearing, petitioner had called her, met with her and taken her to lunch several times. Wendy acknowledged that the content of her testimony had sometimes been discussed with petitioner during these visits and calls.

Petitioner testified before the board of education that he had never invited the two students to the party. He said that when they asked him one day at the driving range whether he was going to attend the upcoming raft race he told them "no," but explained to them that he went to an annual pre-raft-race party at the Michigan Wheel Test Basin. When they asked where Michigan Wheel was located, he simply gave them directions. Moreover, although he did not specifically remember having written down a telephone number on Wendy's book, he said he often provided his number to students in case they needed a ride home from driver's training classes. Petitioner conceded that, out of fear, he had originally lied to board of education investigators about the girls' presence at the party.

In the tenure commission's decision, Commissioner Gibson gave little weight to the testimony of Wendy and petitioner, finding that the former's midstream change in story which had apparently been precipitated by prior meetings with petitioner and the latter's attempts to persuade

Wendy to falsify her testimony seriously jeopardized the credibility of these witnesses. On the other hand, Commissioner Gibson saw no reason not to credit Mary's testimony, even though Mary herself had experienced many personal problems, such as drug and alcohol use and unwed motherhood.

At points, Commissioner Gibson's findings regarding the invitation to the party are stated rather weakly. She found that Mary "could reasonably believe she had been invited" and that, rather than discouraging this belief, petitioner had encouraged it by introducing the students to his friends at the party and by telling them where the beer was located. Later, however, Gibson specifically found that "[petitioner's] actions were an invitation to get [Mary] to attend and participate in the party." In their concurring opinion, Commissioners Young and Schuster found that petitioner "did invite, or created the unmistakable aura of invit[ing], at least one minor female student to an adult party."

We believe that the tenure commission majority's finding that petitioner invited at least one female student to the party was supported by competent, material and substantial evidence on the record when viewed as a whole. Reversing that finding would merely "invade the province of [the] exclusive administrative fact-finding by displacing [the] agency's choice between two reasonably differing views." *Comstock, supra,* p 285, citing *Beebee v Haslett Public Schools (After Remand),* 406 Mich 224, 231; 278 NW2d 37 (1979).

The tenure commission's second finding, i.e., that the two female students drank beer and smoked marijuana in petitioner's presence at the party, is also supported by competent, material and substantial evidence.

Petitioner stated that he arrived at the party at about 7:30 P.M. with two male friends and that about one-half hour later the students arrived. Two friends of petitioner who were at the party said petitioner looked surprised to see the students. There was conflicting testimony as to what occurred when the two students first came in contact with petitioner at the party. Petitioner testified that the students said they were "out partying" and that they looked somewhat "loose," like they had been drinking. Petitioner said that he introduced the students to his friends and chatted with them for about ten minutes, after which they disappeared. Petitioner said he never told the students to leave because he thought they had left on their own. He acknowledged that fifteen minutes after he initially saw the two students he saw Wendy standing down near the cement foundation of a metal derrick constructed on the riverbank, but that thereafter he saw neither of the students until preparing to leave the party several hours later. He testified that he spent most of the party in an out-of-the-way spot behind a wrecker parked next to the Michigan Wheel building, some seventy feet from the derrick where the students allegedly spent most of their evening. It was undisputed that many of those attending the party were drinking alcoholic beverages and smoking marijuana.

Mary admitted to the board of education that she and Wendy had smoked two "bowls" (two pipes full) of marijuana and had drunk several beers before having arrived at the party. She also testified that when they arrived, petitioner gave them some beer and that, during the course of the evening, they smoked marijuana in petitioner's presence. Before the tenure commission, Mary altered her testimony somewhat and testified that

petitioner had not handed them their first beer but had, instead, directed them to a refrigerator where they could get their own. Petitioner and several of his friends denied that petitioner had ever given the students beer at the party. Wendy testified before the board of education that petitioner did not give her a beer when they first met at the party and that she had obtained her first beer herself. She could not remember whether petitioner had given Mary a beer, but observed that Mary already had one when she returned with beers for both herself and Mary.

Both before the board of education and the tenure commission Mary testified that she had smoked marijuana and had drunk beer in petitioner's presence at the party. At the board of education hearing, Wendy also affirmed that Mary had smoked marijuana and had drunk beer in front of petitioner. She noted, however, that she intentionally hid her own marijuana smoking from petitioner out of embarrassment.

Before the tenure commission, Wendy recanted part of her board of education testimony. She testified that neither she nor Mary smoked marijuana or drank beer in petitioner's presence during the party. Six of petitioner's friends testified that although each had seen the students smoke marijuana and drink beer at the party, this had never taken place in petitioner's presence.

Some of Wendy's unrecanted testimony weakened petitioner's blanket denial that he had lost sight of the two students through most of the middle portion of the party. Wendy testified before the tenure commission that during the party petitioner and Wendy would sometimes see each other and acknowledge each other's presence with a smile. Wendy also reluctantly testified before the tenure commission that she had seen a blonde-

haired woman next to petitioner and later at the party, or at some later time, had asked petitioner if the woman was his wife. Petitioner's wife testified before the board of education that she arrived at the party at about 8:30 P.M. and that she and her husband spent most of their time in the cement area down by the river, an area very near the derrick where the two students spent most of their evening.

Wendy also gave unrecanted testimony before the board of education that just before leaving the party, Mary was sitting in a police car with her arm around petitioner and at one point reached over and kissed him. Wendy said that both she and Mary drank beer during this time by the police car. Petitioner conceded before the tenure commission that just as he was leaving the party he saw the two students standing next to a police car drinking beer. Observing that the students were intoxicated, petitioner convinced a friend to drive the students home. Petitioner, two of his male friends, Mary and Wendy then left the party together in a car.

Thus, besides the direct testimony of Mary, who flatly asserted that she had smoked marijuana and had drunk beer in petitioner's presence at the party, there was also testimony suggesting that petitioner maintained some visual contact with the students during the party and had spent at least some of his time near where the students were smoking and drinking. Under these circumstances, we cannot conclude that the tenure commission's finding that the students drank beer and smoked marijuana in petitioner's presence is not supported by substantial evidence.

The tenure commission's third finding, i.e., that petitioner took Mary home alone in his automobile

after leaving the party, is supported by petitioner's own testimony before the board of education.

Next, petitioner argues that the tenure commission improperly made its third finding regarding petitioner's having driven Mary home alone after the party because he was never put on notice that taking the student home by itself constituted a basis for a charge of wrongful conduct.

Originally, the third charge against petitioner provided:

> 3. Mr. Barcheski took one of the female students, Mary . . ., home in his automobile after leaving the party. Mary . . . was 15 years of age at the time in question. On the way to the residence of Mary . . ., Mr. Barcheski parked his automobile and had sexual intercourse with [her] in his automobile.

The board of education made specific findings regarding this charge, stating:

> (3) Mr. Barcheski took one of the female students, Mary . . . home in his automobile after leaving the party. Mary . . . was fifteen years of age at the time in question.
>
> With regard to the charge that on the way to the residence of [Mary], Mr. Barcheski parked his automobile and had sexual intercourse with [her] in his automobile, we conclude that the evidence is conflicting and inconclusive and no factual finding is, therefore, made regarding same.

In this concurring opinion, Member Hartman concluded that, under the circumstances, the fact that petitioner took Mary home alone in his automobile was by itself an exercise of poor judgment:

> [T]he fact that Mr. Barcheski took this 15 year old girl home, who was intoxicated and who had

been smoking marijuana, unaccompanied by another adult, exhibited extremely poor judgment and invited charges and claims of improper conduct.

Petitioner argues that when the board of education dropped the charge of sexual intercourse, it sub silentio added a charge that taking Mary home alone was improper and wrongful conduct. In so doing, says petitioner, the board of education based its decision to discharge him in part on a charge of which he had not been given proper notice.

Based on petitioner's own testimony, however, we believe that petitioner was, or should have been, well aware that taking Mary, a young, intoxicated female student home alone in his car constituted, by itself, grounds for discipline. Petitioner stated that the students appeared intoxicated when they arrived at the party and were in even worse shape when he found them several hours later as he was leaving the party. Moreover, petitioner testified that on previous occasions, he had asked another driver's training instructor to give Mary a ride home because he thought she had a "crush" on him. Petitioner also explained that on one occasion Mary had placed her head on his shoulder while his class was watching a movie. As noted previously, Wendy testified that at the end of the party Mary put her arm around petitioner and kissed him. Wendy gave unrecanted testimony that when petitioner's friend, Michael Maxim, gave the two students and petitioner a ride to the social hall where petitioner had left his car, Mary kept her hand near the zipper of petitioner's pants and that petitioner made no effort to remove it. Mary herself said that she and petitioner kissed passionately while riding in the back seat of Maxim's car.

Given this factual scenario and the earlier findings of the board of education on this issue, petitioner was adequately put on notice that driving Mary home alone constituted by itself conduct supporting a charge of improper or wrongful conduct which could properly be considered in deciding whether a penalty would be appropriate.

Finally, petitioner argues that the tenure commission erred in admitting evidence regarding events which allegedly took place while petitioner was riding in his friend's car immediately upon leaving the party and before he drove Mary home alone because that evidence constituted the improper impeachment of several witnesses on a collateral matter. We disagree.

Although petitioner is correct in asserting that generally a witness may not be impeached on matters which are purely collateral, *Cook v Rontal*, 109 Mich App 220, 229; 311 NW2d 333 (1981), lv den 415 Mich 854 (1982); *McMiddleton v Otis Elevator Co*, 139 Mich App 418, 426-427; 362 NW2d 812 (1984), modified on other grounds 424 Mich 862 (1985), the testimony regarding the events which allegedly took place between petitioner and Mary while riding in the car immediately after leaving the party was not purely collateral, but rather was probative of the reasonableness of petitioner's subsequent conduct in driving Mary home alone. As observed by the circuit court on this issue, "Whether driving a student home is innocuous depends on the circumstances." The testimony found to be collateral by petitioner was in fact pertinent because it helped to place petitioner's conduct in context and aided in determining whether, under the circumstances of this case, it was improper for petitioner to drive Mary home alone.

For the foregoing reasons, the circuit court's

affirmance of the tenure commission's ruling that petitioner's discharge was based on reasonable and just cause is affirmed.

Affirmed.