HAGERTY v STATE TENURE COMMISSION

Docket No. 108561. Submitted March 13, 1989, at Lansing. Decided August 7, 1989. Leave to appeal applied for.

Kathleen Hagerty, a tenured teacher in the Birmingham School District, was discharged following a hearing before the Birmingham School District Board of Education. The decision was affirmed by the State Tenure Commission and the Ingham Circuit Court, Peter D. Houk, J. Hagerty appealed, alleging violation of her right to due process because the attorney appointed by the board of education as the hearing officer was a member of the same law firm as the attorney for the Birmingham School District, the charging party. Hagerty also alleged that there was no reasonable or just cause for her discharge.

The Court of Appeals *held:*

1. There was no due process violation. There is no evidence of actual bias or prejudice in this case. The hearing officer conducted the hearing in a fair and judicious manner.

2. While not adopting a per se rule which would require reversal in situations such as this, this panel indicated that, should this issue be again brought before them, they would then adopt such a per se rule.

3. The charging party demonstrated that Hagerty's teaching methods and procedures had an adverse effect on her students. Just cause was shown for her discharge.

Affirmed.

1. ADMINISTRATIVE LAW — DUE PROCESS — BIAS OR PREJUDICE.

Disqualification of a decision maker is proper, without a showing of actual bias, where the decision maker (1) has a pecuniary interest in the outcome, (2) has been the target of personal abuse or criticism from the party before him, (3) is enmeshed in other matters involving the petitioner, or (4) might have pre-

REFERENCES

Am Jur 2d, Administrative Law §§ 565 *et seq.*; Schools §§ 156, 158, 162 *et seq.*, 183.

See the Index to Annotations under Bias or Prejudice; Teachers and Instructors; Tenure.

judged the case because of prior participation as an accuser, investigator, fact finder or initial decision maker.

2. Schools — Tenured Teachers — Discharge Proceedings — Due Process.

A tenured teacher, in order to succeed with a due process challenge to discharge proceedings conducted before an attorney appointed by the charging party as the hearing officer who is a member of the same law firm as the attorney for the charging party, must show actual bias in the proceedings or a risk or probability of unfairness that is too high to be constitutionally tolerable.

3. Schools — Tenured Teachers — Discharge or Demotions — Reasonable and Just Cause.

Discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause; reasonable and just cause can be shown only by significant evidence proving that the teacher is unfit to teach; the focus of this evidence must be the effect of the teacher's questioned activity on the students (MCL 38.101; MSA 15.2001).

*Hiller, Hoekenga & Amberg* (by *Steven J. Amberg* and *Joseph H. Firestone*), for Kathleen Hagerty.

*Clark, Hardy, Lewis, Pollard & Page, P.C.* (by *William G. Albertson*), for the Board of Education of the Birmingham Public Schools.

Before: Doctoroff, P.J., and Maher and Marilyn Kelly, JJ.

Doctoroff, P.J. Kathleen Hagerty, a tenured teacher at Berkshire Middle School in the Birmingham School District, was discharged following a hearing before the Birmingham School District Board of Education. This decision was affirmed by the State Tenure Commission and the Ingham Circuit Court. She appeals as of right raising two issues which do not require reversal.

I

Prior to the commencement of the hearing before the board, the board appointed attorney Dennis Pollard as hearing officer and granted him the authority to rule on motions and evidentiary matters, subject to the board's right to overrule any of his decisions. The board also expressly retained the exclusive authority to evaluate and judge the facts. The charging party, the Birmingham School District, was represented by attorney William G. Albertson, who is a member of the same law firm as Pollard.

Hagerty claims that the due process requirement of MCL 38.101; MSA 15.2001 was violated because the board's hearing officer, Pollard, was from the same law firm as Albertson, the prosecuting counsel.

In *Crampton v Dep't of State,* 395 Mich 347, 351; 235 NW2d 352 (1975), our Supreme Court identified four situations where, without a showing of actual bias, the United States Supreme Court has disqualified a decision maker who:

(1) has a pecuniary interest in the outcome;
(2) "has been the target of personal abuse or criticism from the party before him";
(3) is "enmeshed in [other] matters involving petitioner . . ."; or
(4) might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker.

Hagerty claims Pollard possessed not only a constitutionally impermissible pecuniary interest in the outcome of the case, but was enmeshed in matters involving the case and was strongly identified with one of the parties. Hagerty argues that, given Pollard's interest in the outcome, the proba-

bility of actual bias exceeded constitutional tolerance and did not necessitate a showing of actual bias. We disagree.

This issue has been considered several times by this Court. In *Arnold v Crestwood Bd of Ed,* 87 Mich App 625, 651-652; 277 NW2d 158 (1978), the plaintiffs charged that they were denied due process of law because counsel for the board both represented the board's case and acted as an advisor to the board during the proceedings. This Court held that only if evidence of prejudice or bias clearly appears on the record will participation of counsel in the dual role constitute a violation of due process.

In *Golembiowski v Madison Heights Civil Service Comm,* 93 Mich App 137, 142; 286 NW2d 69 (1979), lv den 408 Mich 893 (1980), the plaintiff claimed that he was denied a fair trial because the attorney who prosecuted the case on behalf of the city was a member of the same law firm which included a partner who acted as legal adviser to the commission which heard the case. This Court concluded that, absent some indication of bias, the mere fact that two attorneys belonged to the same firm did not result in a constitutionally intolerable predicament.

In *Niemi v Kearsley Bd of Ed,* 103 Mich App 818, 821-822; 303 NW2d 905 (1981), the attorney who regularly served as the controlling school board's adviser represented the charging party in disciplinary proceedings before the same board. The Court stated:

> We recognize that an attorney's dual role carries with it the potential for prejudice and find that the better practice is to appoint an independent attorney to represent the charging party at a dismissal hearing. We decline, however, to adopt a

per se rule that would require reversal whenever an attorney performs both functions.

The *Niemi* Court found that the combination of investigative and judicial roles in an administrative hearing has been expressly upheld in federal and state courts where there has been no showing of actual bias. *Id.,* p 822. The *Niemi* Court found no showing of prejudice at the board hearing and additionally observed that, because the plaintiff had received a de novo review before the State Tenure Commission, the plaintiff's rights were fully protected. *Id.,* pp 823-824.

In *Ferrario v Escanaba Bd of Ed,* 426 Mich 353, 379-380; 395 NW2d 195 (1986), the Court held that a plaintiff does not have to show actual bias to show a violation of his due process rights, but the plaintiff must show a risk or probability of unfairness that is too high to be constitutionally tolerable.

*Plymouth-Canton Community School Dist v State Tenure Comm,* 166 Mich App 331, 338; 419 NW2d 783 (1988), involved the same hearing officer and charging party's attorney as in the case at bar. The Court held that application of the *Ferrario* test imposes upon the teacher the burden of showing (1) actual bias on the part of hearing officer Pollard because of his relationship with the charging party's attorney, or (2) a risk or probability of biased decision making that is so great as to be constitutionally intolerable. As in the instant case, the teacher had made no claim of actual bias. Furthermore, as in the instant case, neither the State Tenure Commission nor the trial court had based their decisions on actual bias. Therefore, the *Plymouth-Canton* Court held that the only inquiry was whether the risk or probability of bias was so great as to impermissibly taint the fairness of the

proceedings. Citing *Golembiowski* and *Niemi,* the majority held that it again would decline to hold that the involvement of attorneys from the same firm in a single administrative proceeding, with one attorney acting in an advisory capacity and the other attorney acting in a representative capacity, per se constitutes a violation of due process. *Id.,* p 339. The Court found that Pollard did not serve as a decision maker. The board retained the power to decide the case on the merits. There was no evidence to show that Pollard had a pecuniary interest in the outcome or was enmeshed in other matters involving the school district. *Crampton, supra.*

However, OPPLIGER, J., dissented, stating:

> Rudimentary due process contemplates a hearing before an impartial decision maker. It appears to me that it is repugnant to fairness and propriety that attorneys from the same law firm who are appointed by and paid by the same source, in this case the school board, represent both school board and the petitioner. I am therefore in favor of the adoption of a per se rule against situations in which the charging body and the factfinder are represented by attorneys who are from the same law firm. [*Plymouth-Canton,* pp 340-341.]

Judge OPPLIGER observed that the hearing officer, attorney Pollard, denied the teacher's motion to voir dire Pollard, thus preventing the teacher from establishing actual bias or an intolerable risk of unfairness. This, Judge OPPLIGER concluded, required reversal because "it seems constitutionally intolerable to permit a hearing officer to deny a teacher's request to voir dire the hearing officer when the hearing officer is employed by the same attorney firm that represents the school district." *Id.,* p 341.

In the case at bar, in obvious response to Judge OPPLIGER's dissent in *Plymouth-Canton,* Pollard did not refuse Hagerty's request to voir dire Pollard. On voir dire, Pollard stated that he had not discussed the case with attorney Albertson, the board or the charging parties and had no knowledge of the case other than what the charges stated. He assured Hagerty that he would base his decisions on the law, that she would have an opportunity to appeal any alleged errors of law, that the board and not Pollard had the factual resolution responsibility, and that the board retained the right to overrule Pollard's decisions on points of law. Pollard denied Hagerty's motion for recusation.

Following our review of the record, we conclude there was no evidence that Pollard benefited financially from Hagerty's dismissal. Hagerty's claim that a win for Albertson benefits the law firm as a whole, without more, is too speculative and removed to demonstrate pecuniary interest. Pollard is compensated for his service unrelated to the outcome of the case before the board. There was no evidence that Pollard was enmeshed in other matters involving the school district. Hagerty has failed to establish a due process violation. Further, any alleged procedural deficiencies were cured by the de novo review before the State Tenure Commission. *Niemi, supra.* Our review indicates that Pollard's decisions were fair and unbiased. Thus, we affirm the circuit court's affirmation of Hagerty's discharge as a tenured teacher in the Birmingham School District.

This Court has so far declined to adopt a rule that would require reversal per se in situations such as this, even though we have stated that this practice carries with it the potential for prejudice. We have also opined that the "better practice" is

to appoint an independent attorney to represent the charging party at a dismissal hearing. *Niemi, supra.* Now we more emphatically state that we agree with the dissenting opinion of Judge Oppliger in *Plymouth-Canton,* that it is "repugnant to fairness and propriety that attorneys from the same law firm who are appointed by and paid by the same source . . . represent both school board and the petitioner." We reiterate that we find no evidence of actual bias or prejudice in this case and that Pollard conducted the hearing in a fair and judicious manner. We rest assured that no impropriety occurred and do not imply such belief. However, let the members of the bar be put on notice that in the future, should this issue be brought before the members of this panel, we will vote to adopt a per se rule of reversal. We are convinced that the appearance of impropriety and the potential for prejudice are so great as to warrant such a per se rule. In this time of heightened awareness of attorney propriety and frequent attacks on the integrity of the bar, it behooves us to conduct ourselves with the strictest behavioral restraints. We conclude that a per se rule in cases of this type will better address the concerns of the public and the members of our profession.

II

Discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause. MCL 38.101; MSA 15.2001. Reasonable and just cause can be shown only by significant evidence proving that a teacher is unfit to teach. Because the essential function of a teacher is the imparting of knowledge and of learning ability, the focus of this evidence must be the effect of the teacher's questioned activity on the students. *Bee-*

*bee v Haslett Public Schools,* 66 Mich App 718; 239 NW2d 724 (1976), rev'd on other grounds 406 Mich 224; 278 NW2d 37 (1979); *Benton Harbor Area Schools Bd of Ed v Wolff,* 139 Mich App 148, 154; 361 NW2d 750 (1984), lv den 422 Mich 976 (1985). This has become known as the "adverse-effect doctrine." *Miller v Grand Haven Bd of Ed,* 151 Mich App 412, 418-421; 390 NW2d 255 (1986), lv den 426 Mich 881 (1986).

Hagerty claims that the school board failed to demonstrate that her teaching methods and procedures had an adverse effect on the students. We disagree.

The power of this Court in reviewing a decision by the commission is limited. This Court determines from the record whether the proof received by the school board or the State Tenure Commission or both supports the findings at which the State Tenure Commission arrived. The standard of review is whether that decision is supported by competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 24.306(1)(d); MSA 3.560(206)(1)(d); *Nolte v Port Huron Area School Dist Bd of Ed,* 152 Mich App 637, 646; 394 NW2d 54 (1986); *Barcheski v Grand Rapids Public Schools Bd of Ed,* 162 Mich App 388, 395; 412 NW2d 296 (1987), lv den 430 Mich 869 (1988).

Our review of the record discloses that the State Tenure Commission's findings are supported by substantial, material and competent evidence, and we therefore affirm. From 1981 through 1984, Hagerty received unsatisfactory evaluations of her performance. The principal of her school and the school board received complaints from students and parents requesting that students be allowed to change classes. Her supervisors made many personal observations of her classroom and submitted

written evaluations and suggestions to her. She was apprised several times that the administration was concerned about her teaching ability and found it unsatisfactory, especially in the following areas: (1) focusing attention on the learner, his learning and his growth, (2) demonstrating competency in management and control in the classroom, and (3) relating positively and communicating effectively with students, parents, members of the community and other staff members. Hagerty rejected suggestions and offers of help and ignored or denied all negative observations of her difficulties. Upon review of the record, we find that Hagerty's directions to students were unclear, her enthusiasm was low, student participation was limited and unencouraged and her students were unattentive and unmotivated. Many of her former students were having difficulty in the subject area in high school. Hagerty's inability to communicate with and motivate her students adversely affected their educational process.

Affirmed.