BOARD OF EDUCATION OF THE ANN ARBOR PUBLIC SCHOOLS
v ABRAHAMS

Docket No. 133068. Submitted December 1, 1992, at Lansing. Decided
October 18, 1993, at 9:20 A.M. Leave to appeal sought.

Morris Abrahams, a tenured teacher, was discharged by the
Board of Education of the Ann Arbor Public Schools because of
alleged improper conduct involving female students. The State
Tenure Commission, with one member abstaining, was equally
divided concerning whether the school board was justified in
discharging Abrahams, two members finding the testimony of
the students credible and voting to sustain the discharge and
two members finding that the testimony of the students was
not credible and voting to set aside the discharge and order
reinstatement. The commission subsequently ruled by a major-
ity vote that the legal effect of a tie vote was that the school
board had failed to sustain its burden of proof and ordered that
Abrahams be reinstated. The Washtenaw Circuit Court, Me-
linda Morris, J., reversed, determining that the order of rein-
statement was ineffective because a majority of the commission
had not voted to reinstate and holding that the findings of the
two commission members who found the students' testimony
credible were supported by competent, material, and substan-
tial evidence, while the findings of the other two members were
not so supported. Abrahams appealed.

In an opinion by D.A. ROBERSON, J., in which HOLBROOK, JR.,
P.J., concurred in the result only, the Court of Appeals re-
versed the order of the Washtenaw Circuit Court.

D.A. ROBERSON, J., stated that the circuit court erred both in
determining that the commission's order of reinstatement was
ineffective and in holding that the findings of the two members
who found that the testimony of the students was not credible
were not supported by competent, material, and substantial
evidence on the record.

Because the school board has the burden of proving the
propriety of its dismissal of a teacher in the proceedings before
the State Tenure Commission, the commission was correct in
its determination that the tie vote had the effect of being a
determination that the school board had failed to sustain its
burden of proof.

Although less than a majority of the commission concurred

in the finding that the school board's position was not sustained
by evidence on the record, a majority of the commission signed
the order requiring reinstatement on the basis of the tie vote,
thus satisfying the requirement of statute and administrative
rule that a decision or order by the commission ordering
reinstatement be by a majority vote of the commission.

The finding that the students' testimony was not credible was
supported by competent, material, and substantial evidence on
the record. Accordingly, the conclusion that the board failed to
sustain its burden of proof was supported on the record, and
the circuit court erred in reversing the order of the commis-
sion.

TAYLOR, J., dissenting, stated that the trial court's decision
should be affirmed, because the two members of the State
Tenure Commission who found that the testimony of the stu-
dents was not credible failed to take into account the tender
years of those witnesses and thus incorrectly reached the
conclusion that their testimony was not credible.

*Miller, Canfield, Paddock & Stone* (by *James E.
Tobin*), for petitioner.

*White, Beekman, Przybylowicz, Schneider &
Baird, P.C.* (by *Arthur R. Przybylowicz*), for re-
spondent.

Amicus Curiae:

*Mark H. Cousens,* for Michigan Federation of
Teachers, AFT, AFL-CIO.

Before: HOLBROOK, JR., P.J., and TAYLOR and
D. A. ROBERSON,* JJ.

D. A. ROBERSON, J. Respondent, Morris Abra-
hams, appeals as of right from the trial court's
order reversing the order of the State Tenure
Commission. The commission voted two to two
concerning the issue whether the petitioner, the
Board of Education of the Ann Arbor Public

* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

Schools, was justified in discharging respondent for improper conduct. One member of the commission abstained. The commission subsequently ruled that the legal effect of the tie vote was that the board had failed to sustain its burden of proof and ordered that respondent be reinstated. The trial court, however, agreed with the two members who found that the discharge was justified and reversed the commission's ruling. We reverse the decision of the trial court.

Respondent was a tenured teacher and girls' basketball coach at a high school in Ann Arbor. On or about September 24, 1980, the school board charged respondent with unprofessional conduct with respect to six female students. Hearings were held before the board on November 6, 13, and 17 and December 8 of 1980, at which five of the six students testified. Respondent presented witnesses who contradicted the students' testimony, but he did not testify at the hearings. On December 17, 1980, the board issued its decision, unanimously finding reasonable and just cause to discharge respondent.

On January 13, 1981, respondent appealed the board's decision to the State Tenure Commission and requested a hearing before the commissioners. On October 22, 1981, the board filed a motion to prevent respondent from testifying or subpoenaing the female students. On July 30, 1982, the commission denied the motion. The board appealed to the circuit court, which found that the appeal was premature because it did not come within the exception to the prohibition of interlocutory appeals from administrative agencies. On May 2, 1984, this Court remanded the case for a determination of the merits of the issue. On August 7, 1985, the circuit court affirmed the commission's ruling. The board did not appeal this decision.

The commission held hearings from May 2, 1986, to April 15, 1987. Four of the five student witnesses testified before the commission. Respondent's deposition was taken at the state prison in Jackson, where he was serving a sentence for an unrelated charge that arose in 1984.[1] Respondent was also allowed to testify at the hearing. On August 22, 1988, the commission issued two separate decisions. Two commissioners, Leonard Porterfield and Jon Schuster, ruled that respondent's discharge was not for reasonable and just cause, finding that the testimony of the five student witnesses lacked credibility. Two commissioners, Wilbur Hass and Patricia Montgomery, found the testimony of the five students more credible than the testimony of respondent and ruled that the board had reasonable and just cause to discharge respondent. The fifth commissioner, Anne Patton, abstained from voting because of a conflict.[2]

On October 19, 1988, respondent filed a motion for clarification of the legal effect of the tie vote. On July 7, 1989, the commission issued its decision, concluding that the discharge could not be upheld because there was not a majority vote in favor of the discharge and the board had failed to meet its burden of proof.

On September 5, 1990, the trial court issued its opinion and order, reversing the July 7 order of the commission. The trial court reviewed the commission's Rule 47(1), 1979 AC, R 38.177(1), and determined that because a majority of the commissioners did not vote to reinstate the teacher, the order was ineffective. However, instead of remand-

---

[1] In 1985, respondent was convicted of second-degree murder for the murder of his wife.

[2] Patton disclosed to the parties that her husband had been hired by the law firm that included the board's attorney. Although respondent indicated that he had no objection to Patton's participation, Patton chose to abstain.

ing the case to the commission, the trial court stated that it would review the entire record to determine whether there was competent, material, and substantial evidence to support either set of findings. The trial court, without explanation, held that the Porterfield findings were not supported by competent, material, and substantial evidence. The trial court, again without explanation, held that the Hass findings were supported by competent, material, and substantial evidence.

This Court must review first the commission's determination regarding the legal effect of the tie vote. Legal rulings of an agency should be set aside only if they are in violation of the constitution or a statute or are affected by a substantial and material error of law. *Amalgamated Transit Union v SEMTA,* 437 Mich 441, 450; 473 NW2d 249 (1991). This Court gives great deference to the construction placed on a statute by the agency legislatively chosen to enforce it. *Cantu v Grand Rapids Public Schools Bd of Ed,* 186 Mich App 488, 491; 464 NW2d 900 (1990). Great deference must also be given to the expertise of the commission where there are gaps in the statutory scheme. *Tomiak v Hamtramck School Dist,* 426 Mich 678, 690; 397 NW2d 770 (1986).

MCL 38.104(b); MSA 15.2004(b) provided at the time of the hearings in this matter[3] that the hearing before the school board was to be conducted in accordance with certain enumerated rules, including:

> No action shall be taken resulting in the demotion or dismissal of a teacher except by a majority vote of the members of the controlling board.

This provision was made applicable to hearings

---

[3] Certain provisions of the teacher tenure act, including MCL 38.104; MSA 15.2004, have been amended, effective June 1993.

before the tenure commission by MCL 38.121; MSA 15.2021, which directed the tenure commission to conduct its hearing on appeal in the same manner as provided in MCL 38.104; MSA 15.2004. See also *Long v Royal Oak Twp and Oak Park Bd of Ed, Dist No 1, Fractional,* 350 Mich 324, 327; 86 NW2d 275 (1957). Construing these provisions of the teacher tenure act together, it is clear that the commission cannot uphold the discharge of a teacher unless a majority of the members vote to discharge the teacher.

Furthermore, on appeal to the commission, the burden of proof remains with the school district of showing reasonable and just cause for discharging the tenured teacher. *Nolte v Port Huron Area School Dist Bd of Ed,* 152 Mich App 637, 646-647; 394 NW2d 54 (1986); *Comstock Public Schools v Wildfong,* 92 Mich App 279, 284; 284 NW2d 527 (1979). The board failed to sustain its burden of proof, because it did not convince a majority of the commission that its discharge of the teacher was justified.

This Court rejects the board's argument that the effect of the tie vote was to affirm the board's decision to discharge respondent, which is the same effect of a tie vote in this Court, MCL 600.313; MSA 27A.313, and in the Supreme Court, MCL 600.230; MSA 27A.230. MCL 38.139; MSA 15.2039 provides that the commission shall act as a board of review for all cases appealed from the decision of a controlling board. However, the commission's procedure and review is not similar to that of this Court or the Supreme Court. The commission has the power and authority to take additional testimony and determine anew as original questions all issues of fact and law decided by the school board. *Lakeshore Bd of Ed v Grindstaff (After Second Rem),* 436 Mich 339, 353-354; 461

NW2d 651 (1990). Moreover, the commission reviews all questions of fact and law de novo. *Id.,* p 354; *Long, supra,* p 326; *Comstock Public Schools, supra,* pp 283-284. Because the commission's review is not similar to that of an appellate court, an analogy to the tie vote effect in the appellate tribunals cannot be drawn.

The trial court, however, ruled that the commission's decision and order violated the provisions of the commission's Rule 47(1), which provides:

> A decision or order of the commission shall be effective only if voted upon by a majority of the members of the commission; however, during the course of the hearing, the rulings of the chairperson of the commission are final.

Respondent argues that this rule must be construed as a rule of quorum, whereby only a majority of members must vote in order to have a valid decision. The board argues that the rule requires any decision made by the commission for or against the teacher must have a majority vote of its members. We reject respondent's argument that this rule is a quorum requirement. However, the commission ordered reinstatement by its subsequent July 7, 1989, order, which determined that the effect of the tie vote was that the board failed to sustain its burden of proof and reinstated respondent. This decision was voted upon by a majority of the members of the commission and therefore is effective under Rule 47(1).

The board further asserts that the commission's findings are not supported by the evidence. Because the commission ordered reinstatement of respondent, this Court will review the Porterfield decision, the findings of which support respondent's reinstatement, and the entire record. Al-

though the board argues that the Court should review both decisions and find in favor of the Hass decision, and thereby reject the Porterfield decision, it is not this Court's function to cast the deciding vote.

The power of this Court in reviewing a decision by the commission is limited. *Hagerty v State Tenure Comm,* 179 Mich App 109, 117; 445 NW2d 178 (1989); *Tomczik v State Tenure Comm,* 175 Mich App 495, 499; 438 NW2d 642 (1989). This Court must determine from the whole record whether there was competent, material, and substantial evidence received by the school board or the tenure commission, or both, to support the commission's finding that there was not reasonable and just cause to reverse the teacher's dismissal. *Id.*; Const 1963, art 6, § 28; MCL 24.306(1)(d); MSA 3.560(206)(1)(d). "Substantial evidence" is evidence that a reasonable mind would accept as sufficient to support a conclusion. *Tomczik, supra,* p 499. The commission's findings of fact are conclusive, and an appellate court cannot decide questions of fact that were before the commission. *Farrimond v East Jordan Public Schools Bd of Ed,* 138 Mich App 51, 56; 359 NW2d 245 (1984); *Freiberg v Big Bay De Noc School Dist Bd of Ed,* 61 Mich App 404, 416; 232 NW2d 718 (1975), after remand 91 Mich App 462; 283 NW2d 775 (1979).

Student "Laura" testified that respondent would shake her hand and, holding on to it and caressing it, talk to her in a low whisper, telling her she was special. Laura also testified that respondent complimented her physique. She also claimed that while they sat on a bench during gym class, respondent stroked her leg, telling her it was soft, and, on another occasion, he rubbed her inner thigh. Laura stated that other students were present during these two incidents. Laura claimed that

respondent told her he wanted to "get in her" when she spoke to him in the hallway that he was monitoring. Laura testified that she skipped two English classes because respondent was waiting outside the door to her classroom and she did not want to talk to him. Instead of attending class, Laura went to her counselor and informed her of the respondent's actions.

The signers of the Porterfield opinion found that Laura had a motive to fabricate her story, because she needed an excuse from being absent from her English class. The opinion also found that her testimony was contradicted by her English teacher, who testified that Laura had skipped class when papers were due. Her testimony was also contradicted by another student, Patricia, who testified that she was talking to respondent when he was monitoring the hall, that Laura approached and spoke to them, and that Laura did not engage in a conversation with respondent apart from her. The opinion also found her accusation that respondent rubbed her inner thigh during gym class to be incredible, because other students were present. After reading the testimony, the factual finding regarding Laura's credibility was supported by the evidence.

Another student, "Jennifer," who played basketball and softball, testified that respondent continuously told her she looked nice running on the basketball court and that she had nice legs. She also claimed that respondent would shake her hand and hold it, caressing it, that he twice attempted to pull her close to him, once in front of another student, Cathy, and that he told her that some day he would have her and that he would go to bed with her. Allegedly, respondent also told her boyfriend that he would take her away from him.

The signers of the Porterfield opinion found that Jennifer was not credible because her boyfriend had testified that respondent only told him he was lucky to be going out with a nice girl and she later had changed this part of her testimony before the commission. The witness Cathy testified that she had not seen respondent pull Jennifer toward him. The opinion also found her accusations lacked merit because, after the alleged statements had been made, respondent had been given a team softball, which Jennifer inscribed "if only you were younger." Jennifer also had given respondent her senior picture with a personal note on the back and had visited him once at his home after she graduated. After reading the testimony, the evidence supports the factual finding regarding Jennifer's credibility.

"Catherine," who was a student physical education assistant for respondent, testified that he would shake her hand, holding it, and, in a low voice, tell her she was his woman. Catherine claimed that respondent had placed his hand down her shirt while she was sitting at a desk in his office. After a few minutes, she left. In response to being asked whether this bothered her, she stated "in a way it did." Catherine also claimed that during finals week, she and her friend Cathy went to respondent's office and asked him if they could play basketball in the gym. Catherine alleged that when Cathy had gone to retrieve a basketball in the supply room across from the gym, respondent pulled down his sweat pants and asked her to engage in fellatio. Catherine claimed she stood there for about five minutes until respondent covered himself when Cathy was returning to the office. After the alleged incident, Catherine played basketball with Cathy in the gym. Cathy testified

that Catherine did not appear upset after she left respondent's office.

The signers of the Porterfield opinion found that Catherine's casual reaction and treatment of respondent's exposing of himself and his placing his hand down her shirt cast doubt concerning whether the incidents had occurred. Furthermore, the opinion stated that Catherine's description of the incidents were incredible, in that the door to the office was open when respondent exposed himself to her, that she said nothing during the two or three minutes that respondent had his hand down her shirt, and that she finished her work and left for lunch after respondent removed his hand.

"Denise" testified that respondent was her gym teacher and that she was the assistant manager of the girls' basketball team that he coached. Denise testified that respondent would shake her hand, hold on to it, and stroke it. Denise claimed that one evening as respondent was driving her home from a basketball game, he told her he had to stop at another school, where he coached a boys' basketball team, to get a clipboard. She went inside the school with him, and allegedly he put his arms around her, kissed her, exposed his penis, and placed her hand on his penis. Denise claimed that she told respondent that she wanted to go home and that, during the drive, he placed his hand on her chest and told her that he loved her and that she was special. Another time, Denise went into respondent's office to tell him she would not be in class, but he was on the phone. When he completed his telephone conversation, he walked over to Denise, shut the door, pulled down his sweat pants, and asked her to engage in fellatio. Denise claimed she looked away and then, after he turned, she left. Denise testified before the com-

mission that she regarded respondent as a friend, even after these incidents.

The signers of the Porterfield opinion found that Denise's testimony lacked credibility because although the two incidents occurred during the first semester, she continued to walk into respondent's office alone. Also, another student who assisted respondent during the second semester testified that Denise had a good relationship with respondent during the second semester and would visit him in his office during free periods and after school. Furthermore, Denise was assigned to respondent's gym class during the second semester, yet she did not attempt to transfer. In fact, there was evidence that Denise was originally assigned to another teacher's gym class, but was transferred to respondent's gym class, although she denied she sought a transfer.

The opinion also found the credibility of Catherine and Denise was questionable because they had driven to respondent's house after the alleged incidents to "toilet paper" it. Catherine and Denise testified that they stopped at respondent's house because he was outside on the porch and spoke with him. After reading the testimony, we find that the factual findings in the Porterfield opinion regarding the credibility of Catherine and Denise were supported by the evidence.

The final student witness, "Catherine," described a similar handshake by respondent. Catherine testified that respondent told her that he would always remember her, that she was beautiful, and that "some day [it would be] me and you." Catherine also claimed that respondent said: "The day I'm happy is the day that I get to spend the night with you." Catherine claimed that respondent made these comments during the first semester of the 1978-79 school year in her study hall. Cather-

ine testified that she began ignoring respondent when her friend Kristine pulled her away from him while he was shaking her hand in the hallway. Catherine did not report these incidents until Jane Bennett asked her if respondent had ever bothered her.

The signers of the Porterfield opinion found that only the testimony regarding respondent's desire to spend an evening with Catherine would support a finding of reasonable and just cause for discharge, but found that this part of her testimony was questionable because it was called into question by respondent's impeachment of her during cross-examination. Catherine's testimony was contradicted by the cross-examination of Ronald Tesch, during which a copy of the schedule of teachers for the physical education department for the first semester of 1978-79 school year was introduced. The schedule reflected that respondent was not assigned to monitor the study hall. In view of this testimony, the finding regarding Catherine's credibility was supported by the evidence.

The findings in the Porterfield opinion regarding the credibility of the student witnesses were supported by competent, material, and substantial evidence, and, therefore, the board failed to sustain its burden of proving that respondent's discharge was justified. This Court, however, cannot order reinstatement of respondent because he is currently serving his sentence in prison. However, respondent is entitled to back pay for the period from the date of his discharge to the date of his arrest.

Reversed.

HOLBROOK, JR., P.J. I concur in the result only.

TAYLOR, J. *(dissenting)*. I would sustain the trial

court's opinion and order that ruled that the discharge was justified and that reversed the State Tenure Commission's reinstatement of respondent Abrahams despite the commission's tie vote. The reasons given in the Porterfield opinion to support the view that the student witnesses' testimony was not credible rest on legal error, therefore the findings in the Porterfield opinion should be reversed.

As the majority correctly states, under our limited scope of review of this matter, this Court must determine from the whole record whether there was competent, material, and substantial evidence to support the commission's finding that there was not reasonable and just cause to reverse respondent's dismissal. However, we are to hold unlawful and set aside such a decision if it was affected by a substantial and material error of law. *Nestell v Bridgeport-Spaulding Community Schools Bd of Ed,* 138 Mich App 401, 404; 360 NW2d 200 (1984); MCL 24.306; MSA 3.506(206).

The signers of the Porterfield opinion purport to relate and critique the testimony of several women who were respondent's students at a time when he was their high school gym teacher. These students alleged that respondent engaged in improper conduct toward them. The signers of the Porterfield opinion ultimately conclude that each of these witnesses was lying concerning the alleged improper touching or improper comments, although these allegations were made not only at the time of the initial complaints in 1980 but also reiterated by the witnesses at hearings held before the commission in 1986 and 1987.

I note particularly the treatment in the Porterfield opinion of the testimony of "Denise," which, like that of the other witnesses, was deemed not to be credible. Without exception, the reasons given

for disbelieving her rest on the fact that her behavior toward respondent was irrational in light of what she claimed he did. That is, she did not try to avoid him despite his sexual misconduct toward her, appeared to have a good relationship with him, and even went so far as to decorate the environs of his home with toilet paper. The signers of the Porterfield opinion conclude that Denise cannot be believed because of her irrational behavior.

However, the examples given in the Porterfield opinion as the bases for discounting her testimony do nothing more than point out that Denise acted like a teenage girl in her behavior toward her teacher. This entire line of reasoning completely overlooks the fact that Denise *was* a teenager at the time the misconduct occurred.

The line of reasoning in the Porterfield opinion fundamentally misunderstands our law by applying an adult standard to the conduct of a minor. Our jurisprudence has historically afforded greater protection to those of tender years like Denise. As Justice COOLEY said:

> Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly. [*Powers v Harlow,* 53 Mich 507, 515; 19 NW 257 (1884).]

Children are expected to act like children: it is expected that they may respond inappropriately to the actions of others. By analogy, a child below the age of sixteen cannot, under our law, consent to sexual penetration or contact. MCL 750.520b(1)(b); MSA 28.788(2)(1)(b), MCL 750.520c(1)(b); MSA 28.788(3)(1)(b), and MCL 750.520d(1)(a); MSA

28.788(4)(1)(a). Evidence that a child purports to consent to sexual acts cannot be used as a defense or to discredit the child's assertions. It is, in fact, legally irrelevant. In this matter, the fact that Denise responded inappropriately to respondent's acts of sexual aggression cannot be used to discredit her, because to do so would establish in our law the proposition that the infirmities of minors are not a shield for their protection under the law, but, rather, a sword to discredit them from vindicating their legal rights.

Nevertheless, in direct contravention of this longstanding principle, it is stated in the Porterfield opinion that, in essence, "Teenagers who act like teenagers cannot be believed."

My review of the Porterfield opinion leads me to conclude that, while facially valid and reasonable factors were given for disbelieving other witnesses, a legally improper factor was the sole reason given for discrediting Denise. This constitutes a substantial and material error of law. Her testimony should stand, and, standing alone, it constitutes evidence sufficient to show reasonable and just cause for discharging respondent.

Accordingly, I would reverse the findings set forth in the Porterfield opinion and order on the ground that, had not the signers of that opinion applied faulty legal reasoning in assessing Denise's credibility, the inescapable conclusion would have been that respondent had engaged in unprofessional sexual conduct toward one of his young charges. Were it not for the vintage of this case, I would vote to simply remand this case for new fact finding on the existing record. In the alternative, and in light of the age of this case, I would find that the school district succeeded in carrying its burden of proof to demonstrate that reasonable

and just cause existed for respondent's discharge. See *Couch v Saginaw Malleable Iron,* 51 Mich App 317, 321; 214 NW2d 885 (1974). Ascribing the two votes of the Porterfield opinion to the two-vote Hass opinion results in a four to zero vote to discharge respondent, i.e., to deny his petition, in view of which there would be no need to delve into the tie-vote issue as the majority has done.

Again, I would affirm.