Howard T. KILPATRICK, Plaintiff,

v.

Mrs. Dorothy WRIGHT, Individually and as Chairman of the Alabama State Tenure Commission, et al., Defendants.

Civ. A. No. 76–396–N.

United States District Court, M. D. Alabama, N. D.

Aug. 24, 1977.

J. Paul Lowery, Montgomery, Ala., for plaintiff.

William J. Baxley, Atty. Gen., and Joel E. Dillard, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for the defendant Chairman and Members of the Alabama State Tenure Commission.

Vaughan Hill Robison and Robert T. Meadows, III, Montgomery, Ala., Robison, Belser, Brewer & Mancuso, Montgomery, Ala., for the defendant Members of the Montgomery County School Board.

## MEMORANDUM OPINION

JOHNSON, Chief Judge.

This is a section 1983 action brought by Howard T. Kilpatrick, plaintiff, against the chairpersons and members of the Alabama Tenure Commission and the Montgomery County School Board, individually and in their official capacity as members of the Commission and the Board. The facts have been stipulated in a pretrial order entered by the Court June 29, 1977. Plaintiff was employed by the Montgomery County

School Board as a teacher during the 1975–76 school year. Plaintiff had achieved "continuing service status" or tenure pursuant to title 52, section 352 of the *Code of Alabama* (Recomp.1958). On July 2, 1976, plaintiff received a letter from the superintendent of the Montgomery County Board of Education notifying plaintiff that he had been terminated effective the date of the letter for violation of section 358 of title 52 of the *Code of Alabama* (Recomp.1958). The termination letter indicated that plaintiff had the right to a hearing on the charges forming the basis of the termination. A hearing was held before the Montgomery County Board of Education, at which plaintiff was represented by counsel. The Board found that "the evidence presented overwhelmingly established that during the 1975–76 school year Mr. Kilpatrick was guilty of immorality as set forth in § 358, Title 52, 1940, Code of Alabama, Recompiled 1958 (for example, sexual advances to female students)." It was the further finding of the Board "that during the 1975–76 school year Mr. Kilpatrick [had] been guilty of highly unprofessional conduct in regard to his students, stemming from his actions, as proven by the oral testimony presented to this Board and this furnishes good and just cause for his termination." Plaintiff filed an appeal with the Alabama Tenure Commission which affirmed the Board's decision. A mandamus action was filed in the Montgomery County Circuit Court. Judge Embry held that "the procedural requirements of Ala. Code, tit. 52, § 351 *et seq.*, were complied with herein and that there was sufficient evidence before the Alabama Tenure Commission to support its conclusion that the decision of the Montgomery County Board of Education should be affirmed." While the mandamus action was pending in the state court, plaintiff filed this action attacking the constitutionality of section 358 of title 52 of the *Code of Alabama* (Recomp.1958), on the grounds of vagueness and overbreadth. Plaintiff does not contest the factual findings of the Board. This action is based solely on a due process challenge to section 358.

## I

■ Section 358 provides that a teacher on continuing service status may have his or her contract cancelled "for incompetency, insubordination, neglect of duty, immorality, justifiable decrease in the number of teaching positions, or other good and just cause; but cancellation may not be made for political or personal reasons." The Court is now called upon to determine whether the terms "immorality" and "other good and just cause" are impermissibly vague or so broad that they sweep within their reach conduct which is otherwise protected.

Teachers occupy a singularly important position in society.

Our Nation is deeply committed to safeguarding academic freedom which is of transcendent value to all of us and not merely to the teachers concerned. That freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom. "The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Shelton v. Tucker,* [364 U.S. 479, 487 [81 S.Ct. 247, 5 L.Ed.2d 231] (1960)]. The classroom is peculiarly the "marketplace of ideas." The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth "out of a multitude of tongues, [rather] than through any kind of authoritative selection." *United States v. Associated Press,* D.C., 52 F.Supp. 362, 372.

*Keyshian v. Board of Regents,* 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967). But of equal concern is the well-being and development of the pupil. As noted by the Supreme Court in *Adler v. Board of Education,* 342 U.S. 485, 493, 72 S.Ct. 380, 385, 96 L.Ed. 517 (1952):

A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds towards the society in which they live. In this, the state has a vital concern. It must preserve the in-

tegrity of the schools. That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part of ordered society, cannot be doubted.

With these considerations in mind the Court turns now to the particular issues involved in this action.

## II

■ Plaintiff contends that the terms "immorality" and "other good and just cause" as used in section 358 are fatally imprecise in that they fail to give adequate warning to "an ordinary citizen of average intelligence." While this Court would agree, and in the past has indicated (*see Drake v. Covington County Board of Education*, 371 F.Supp. 974, 980 (M.D.Ala.1974) (Johnson, J. concurring)), that the ultimate reach of the term "immorality" is less than clear, the Court need not decide this question at the present time. "[E]ven if the outermost boundaries of [section 358] may be imprecise, any such uncertainty has little relevance here, where [plaintiff's] conduct falls squarely within the hard core of the statute's proscriptions. . . ." *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Although "[i]t will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of [disputed] terms will be in nice question'", *Grayned v. City of Rockford*, 408 U.S. 104, 110 n. 15, 92 S.Ct. 2294, 2300 n. 15, 33 L.Ed.2d 222 (1972), quoting *American Communications Association v. Douds*, 339 U.S. 382, 417, 70 S.Ct. 674, 94 L.Ed. 925 (1950), where, as here, the teacher has been found guilty of making sexual advances to some of his pupils, that teacher will not be heard to claim that the statute permitting discharge for "immorality" and "other good and just cause" is so impermissibly vague that he could not be expected to know that his actions would fall within its meaning. The Board found the evidence to be overwhelming, and upon a reading of the transcript of the hearing, this Court is inclined to agree with the Board. The sexual improprieties for which plaintiff is being discharged cannot be tolerated in the classroom. The threat to the healthy mental development of impressionable young minds is obvious.

■ Plaintiff contends that variance between the specification of charges, which used the term "unprofessional conduct" and did not mention "immorality," and the findings by the Board that plaintiff was guilty of "immorality" and "highly unprofessional conduct [constituting] good and just cause for his termination" is further evidence of the vagueness of section 358. Plaintiff alleges that because of the imprecision in the statute he was inadequately warned of the charges against which he would have to defend. But as noted by Judge Leventhal in *Meehan v. Macy*, 129 U.S.App.D.C. 217, 392 F.2d 822, 835 (1968), *aff'd en banc*, 138 U.S.App.D.C. 41, 425 F.2d 472 (1969):

> [I]t is not feasible or necessary for the Government to spell out in detail all that conduct which will result in retaliation. The most conscientious of codes that define prohibited conduct of employees include "catchall" clauses prohibiting employee "misconduct," "immorality," or "conduct unbecoming."

*Accord, Arnett v. Kennedy*, 416 U.S. 134, 161, 94 S.Ct. 1633, 1648, 40 L.Ed.2d 15 (1974). Plaintiff was presented with detailed specifications of the charges against him, including the names of the pupils to whom he made improper sexual advances, the places at which these events occurred, an exact description of the improper conduct, and, in most instances, the month in which the improper activity occurred. Whether such actions, if proven, would constitute "immorality" or "other good and just cause" is immaterial in determining whether plaintiff had fair warning. The Supreme Court has stated in context of reviewing a criminal statute:

> The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of

human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.

*Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). In addition, this Court is aided by a judicial gloss which the Alabama Supreme Court has put on the term "other good and just cause." In *Faircloth v. Folmar,* 252 Ala. 223, 40 So.2d 697 (1949), the Alabama court adopted the interpretations of the Indiana courts which hold that the term includes "any cause which bears a reasonable relation to the teacher's fitness or capacity to discharge the duties of his position." *Accord, Cooper v. Perry County Board of Education,* 264 Ala. 251, 254, 86 So.2d 832, 835 (1956). Unprofessional conduct like that committed by plaintiff clearly relates to the fitness of plaintiff to discharge his duties as a teacher. Therefore, this Court finds that plaintiff's activities are within the "hard core" of activities prohibited by section 358, thus making it unnecessary for the Court to determine whether section 358 is unconstitutionally vague at its outermost boundaries. *Broadrick v. Oklahoma, supra.*

### III

■ The second prong of plaintiff's attack on section 358 is based on the overbreadth doctrine. The heart of an overbreadth challenge is the contention that a statute, which otherwise may be clear and precise, catches within its sweep conduct which is constitutionally protected. *See, e. g., Grayned v. City of Rockford, supra,* at 114–21, 92 S.Ct. 2294; *Zwickler v. Koota,* 389 U.S. 241, 249–50, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). "The crucial question, then, is whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." *Grayned v. City of Rockford, supra,* at 114–15, 92 S.Ct., at 2302. Specifically, plaintiff alleges that section 358 by providing for the cancellation of a teacher's contract for "immorality" and for "other good and just cause," causes the conduct of teachers to "be regulated by the whim of some school authority or student or parent in that his conduct, which may be

innocuous in itself, conflicts with some moral concept or some notion possessed by that person or that board, which would be construed to be immorality." Thus, plaintiff contends, the statute prohibits protected as well as unprotected activity. In *Drake v. Covington County Board of Education, supra,* this Court found the statute to infringe upon a teacher's constitutional right of privacy. But because the Court found the statute unconstitutional in its application, it did not consider whether the statute was unconstitutional on its face. 371 F.Supp. at 976.

It cannot be contended that the conduct for which plaintiff was discharged does not provide a sufficient basis for his discharge. Making sexual advances towards female pupils, threatening a pupil with a loaded gun, and attempting to unzip a female pupil's pants in front of a class is conduct that not only cannot be condoned in the classroom setting, but also cannot be condoned by society in general. Instead, plaintiff contends that the unconstitutionality of the act is found not in the act's relation to the activities of the plaintiff but in the activities which the act may reach. In other words, plaintiff is contending that the act is unconstitutional on its face, not as applied.

The Supreme Court has recognized and allowed exceptions to "the traditional rules governing constitutional adjudication [which require] that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma, supra,* 413 U.S. at 610, 93 S.Ct. at 2915. The Court in *Broadrick* recognized two areas in which facial overbreadth challenges have been permitted. "One such exception is where individuals not parties to a particular suit stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves. . . . Another exception has been carved out in the area of the First Amendment." 413 U.S. at 611, 93 S.Ct. at 2915. The Court went on to list four situa-

tions involving the First Amendment where facial overbreadth attacks had been permitted: (1) statutes which regulate only spoken words; (2) statutes ensnaring rights of associations where innocent associations might be caught" (3) statutes regulating the time, place, and manner of expressive or communicative conduct; (4) statutes which require approval of some official authority but which fail to delineate adequate standards for the exercise of official discretion. 413 U.S. at 612–13, 93 S.Ct. 2908. From an analysis of the overbreadth cases, the *Broadrick* Court distilled the following:

> . . . Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. . . .

> It remains a "matter of no little difficulty" to determine when a law may properly be held void on its face and when "such summary action" is inappropriate. . . . But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. . . . To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

413 U.S. 615, 93 S.Ct. 2916.

This case is not one for application of the overbreadth doctrine. First, the statute purports merely to set out the grounds for discharging a teacher who has obtained tenure. Therefore, on its face, it does not prohibit either speech or conduct. Neither does section 358 affect the time, place or manner of expressive or communicative conduct. Finally, the statute does not affect any rights of association or provide for the regulation of conduct resulting in unreviewable prior restraints. At best, section 358 only acts to inhibit the conduct, either communicative or expressive, of teachers which may be construed to be immoral or as providing good and just cause for termination. But even this seemingly broad sweep is limited by the terms of the statute. First, whatever activity the school administration attempts to use as grounds for discharging a tenured teacher must constitute "good and just cause." Second, a teacher may not be terminated for "political or personal reasons." Finally, from the Alabama Supreme Court's interpretation of "other good and just cause" it is clear that the basis for the dismissal must bear "a reasonable relation to the teacher's fitness or capacity to discharge the duties of his position." *State Tenure Commission v. Madison County Board of Education*, 282 Ala. 658, 673, 213 So.2d 823, 835 (1968); *accord, Cooper v. Perry County Board of Education, supra*; *Faircloth v. Folmar, supra*. Thus, while a "fertile legal imagination" can conjure up situations in which application of the statute would infringe on protected activity, this determination is best left to a case-by-case determination rather than the broadsword of the overbreadth doctrine. *See Broadrick v. Oklahoma, supra*; *Hobbs v. Thompson*, 448 F.2d 456 (5th Cir. 1971); *Drake v. Covington County Board of Education, supra.*

An order will be entered accordingly.