**Linda ALFORD, et al., Plaintiffs,**

**v.**

**Thomas E. INGRAM, Jr., in his official capacity as acting State Superintendent of Education, Defendant.**

**Civil Action No. 95–C–484–N.**

United States District Court,
M.D. Alabama,
Northern Division.

March 20, 1996.

Joe R. Whatley, Jr., Andrew Clay Allen, Cooper, Mitch, Crawford, Kuydendall & Whatley, Birmingham, AL, J. Cecil Gardner, Mary E. Olsen, Gardner, Middlebrooks & Fleming, P.C., Mobile, AL, Edward Still, Birmingham, AL, Theron Stokes, Alabama Education Association, Montgomery, AL, for plaintiffs.

Denise Boone Azar, Ashley H. Hamlett, Department of Education, Office of General Counsel, Montgomery, AL, Jimmie Robert Ippolito, Jr., Office of the Attorney General, Montgomery, AL, Richard N. Meadows, State Personnel Department, Montgomery, AL, for defendant.

## MEMORANDUM OPINION [1]

CARROLL, United States Magistrate Judge.

## I. INTRODUCTION AND PROCEDURAL HISTORY

The plaintiffs, teachers within the Alabama public school system who hold teaching certificates, filed this action under 42 U.S.C. Section 1983. They claim that ALA.CODE § 16–23–5 (1987) is unconstitutionally vague, and thus violates the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. The plaintiffs also seek certification of a class. Both parties have submitted briefs on this issue, and a bench trial was held on September 11, 1995.

## II. FACTS

Persons employed as teachers and administrators in the elementary and secondary schools of this state are required to hold a certificate issued by the Superintendent of Education. The original certificate must be renewed periodically. A validly held certificate may be revoked by the superintendent "when the holder has been guilty of immoral conduct or unbecoming or indecent behavior." ALA.CODE § 16–23–5 (1987). Before a certificate can be revoked, certificate holders are entitled to written notice that the Superintendent is considering revocation and a hearing to contest the grounds upon which the proposed revocation would be based. Over the years, the superintendent has revoked teaching certificates for a variety of reasons, including convictions of crimes.[2]

Prior to 1994, no inquiry was made to determine if persons applying for original certificates or attempting to renew certificates had ever been convicted of any crimes. Applicants were simply asked if

---

1. The parties have consented, pursuant to the provisions of 28 U.S.C. § 636(c) to have the magistrate judge conduct all proceedings and enter final judgment.

2. Plaintiffs' Exhibit 8 demonstrates the past operation of the statute.

they had ever had a certificate revoked, suspended, or denied or if they had ever voluntarily relinquished a certificate to avoid revocation proceedings. In 1994, the application and renewal process was changed. Now, in addition to questions about revocations, suspensions, and denials of certificates, applicants for original or renewal certificates must respond yes or no to the following question: "Have you ever been convicted of or entered a plea of no contest to a felony or misdemeanor other than a minor traffic violation?" If the answer is yes, the applicants are asked to provide details of the conviction and appropriate court records. The applicants are specifically notified, however, that "[A] 'yes' answer will not automatically result in non-issuance but may result in a request for additional information."[3] The plaintiffs in this case are all persons who hold certificates which authorize them to teach in the public schools of the state of Alabama. All have received letters from the Superintendent indicating that he is considering the revocation of their certificates under the provisions of ALA.CODE § 16–23–5.[4] The Superintendent has agreed not to pursue revocation pending the outcome of this case.

Three plaintiffs testified at the trial about the potential revocation of their teacher certificates. The first, Regina Hunter, was issued a teacher certificate in 1977. Her most recent renewal certificate was issued in 1991. The Superintendent now proposes to revoke her 1991 certificate based upon her 1985 conviction for conspiring to unlawfully distribute cocaine. She has now received a pardon on that conviction. Obviously, the conviction was a matter of public record at the time her certificate was renewed. Ms. Hunter is currently employed by the Birmingham Board of Education, and teaches and runs the maintenance department at Parker High School where she is tenured. The second teacher, Ms. Linda Alford received a notice of proposed revocation of her most recent teacher certificate, issued in 1992, based upon 1984 convictions of theft of

property in the first and second degrees and the facts and circumstances giving rise to those convictions. She is a tenured teacher with the Dothan City school system, and currently teaches second grade at Gerard Elementary School. The third teacher, Phillip Edmonds was convicted in 1983 of the felony of bringing a stolen motor vehicle into the state. Mr. Edmonds is currently employed by the Bessemer Board of Education, and teaches in the vocational department of the high school. He is facing the revocation of his teacher certificate which was first issued in 1969, and renewed most recently in 1993.

## III. DISCUSSION

■ The plaintiffs do not request the court to examine their individual cases, but rather to declare the statute unconstitutionally vague on its face. After careful consideration, the court concludes that the statute, with a limiting judicial construction, is constitutional.

■ In order to pass constitutional muster and avoid a "void for vagueness" problem, a statute proscribing certain conduct must be drafted "with sufficient definiteness that ordinary people can understand what conduct is prohibited" and "in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

> The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing ... statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.

*Colten v. Com. of Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). The constitution is violated only when a statute is so vague that "persons 'of common intelligence

---

3. Plaintiffs' Exhibit 1.

4. At the time of trial, seventeen persons had received notices of proposed revocation (Plaintiff's Exhibit 5). In addition, there are some 63 persons on whom there is an open investigative file for potential revocation.

must necessarily guess at its meaning and differ as to its application.'" *United States v. Hooshmand,* 931 F.2d 725, 732 (11th Cir. 1991) (quoting *United States v. Mena,* 863 F.2d 1522, 1527 (11th Cir.1989)). Stated another way, the standard test for determining whether the terms of a statute are sufficiently precise to comply with due process concepts is whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that they may act accordingly. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Gosney v. Sonora Independent School Dist.,* 603 F.2d 522 (5th Cir. 1979).

In this case, the statute at issue uses the terms "immoral conduct" and "unbecoming or indecent behavior". While these words may have had certain concrete meanings in simpler times, this court has serious doubts as to whether these terms currently provide fair warning of the proscribed conduct or sufficient guidance to persons who are required to apply those terms and make important decisions about teachers' futures. There are simply too many good faith moral debates in our diverse multicultural society at this time to allow totally subjective judgments about the meaning of the terms "immoral conduct" and "unbecoming or indecent" behavior to control the livelihood of our educators. This dilemma prompted the United States District Court for the District of Oregon to find that a statute allowing for the dismissal of teachers on the grounds of immorality was unconstitutionally vague because:

> Immorality means different things to different people, and its definition depends on the idiosyncracies of the individual school board members. It may be applied so broadly that every teacher in the state could be subject to discipline. The potential for arbitrary and discriminatory enforcement is inherent in such a statute. A statute so broad makes those charged with

its enforcement the arbiters of morality for the entire community. In so doing, it subjects the livelihood of every teacher in the state to the irrationality and irregularity of its judgments. The statute is vague because it fails to give fair warning of what conduct is prohibited and because it permits erratic and prejudiced exercises of authority.

*Burton v. Cascade School Dist. Union High School No. 5,* 353 F.Supp. 254, 255 (D.C.Or. 1973) (citations omitted).[5]

■ The statute before the court is plagued by the same vices as the statute reviewed by the Oregon federal court. It is a facially open-ended statute whose interpretation is subject to whim and caprice of those administering it. The existence of potential problems presented by a facial interpretation of the statute, however, does not necessarily herald the statute's demise. Under well-settled law, a statute may not be declared unconstitutionally vague if it is subject to a narrowing construction which will cure its constitutional ill. *See Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *International Ass'n of Machinists v. Street,* 367 U.S. 740, 749–50, 81 S.Ct. 1784, 1789–90, 6 L.Ed.2d 1141 (1961); *Hershey v. City of Clearwater,* 834 F.2d 937 (11th Cir.1987). The interpretation of a similar statute both by this court and the Alabama Supreme Court provides guidance as to what sort of a limiting construction should be placed on the statute to rescue it from unconstitutionality.

In *Kilpatrick v. Wright,* 437 F.Supp. 397 (M.D.Ala.1977), this court was called upon to construe the constitutionality of a companion statute to the one at issue in this case. That statute provided that tenured teachers could have their contract canceled "for incompetency, insubordination, neglect of duty, immorality, justifiable decrease in the number of teaching positions, or other good and just cause...."[6] The argument made to the court in *Kilpatrick* was that the terms "im-

---

5. Although this court cites, with approval, the language from this case, it does not adopt its holding that no limiting construction can be placed on such a statute. The holding by the court in *Burton v. Cascade School Dist.* is against the great weight of authority.

6. The statute at issue in *Kilpatrick* was Title 52, Section 358 of the Alabama Code (Recomp.1958), which is now codified as ALA. CODE § 16–24–8.

morality" and "other good and just cause" were impermissibly vague or so broad that they sweep within their reach conduct which is otherwise protected. The plaintiff in *Kilpatrick* contended, as do the plaintiffs in this action, that the statutory terms are "fatally imprecise in that they fail to give adequate warning to 'an ordinary citizen of average intelligence.'" *Id.* at 398.

The court in *Kilpatrick* did not reach the facial vagueness issue because it found that the plaintiff's activities "are within the hard core of activities prohibited by [the statute], ... making it unnecessary for the court to determine whether [the statute] is unconstitutionally vague at its outermost boundaries." *Id.* at 399. The court, however, openly suggested that an appropriate limiting construction could be placed on the statute based on a previous interpretation of the statute by the Alabama Supreme Court. As the court in *Kilpatrick* noted:

> this court is aided by a judicial gloss which the Alabama Supreme Court has put on the term "other good and just cause." In *Faircloth v. Folmar,* 252 Ala. 223, 40 So.2d 697 (1949), the Alabama court adopted the interpretation of the Indiana courts which hold that the term includes "any cause which bears a reasonable relation to the teacher's fitness or capacity to discharge the duties of his position." *Accord, Cooper v. Perry County Board of Education,* 264 Ala. 251, 254, 86 So.2d 832, 835 (1956).

*Id.* It is clear to the court, based on the *Kilpatrick* decision and the state cases cited in it, that the objectionable terms at issue in this case are capable of being given a more precise judicial construction so as to avoid a "void for vagueness" holding. The statute before the court can be constitutionally applied so long as the superintendent or others enforcing the statute relate the terms of the statute to fitness to teach. Under such a limiting construction, the superintendent could revoke a teaching certificate only if the "immoral conduct" or "unbecoming or indecent behavior" indicates that the teacher is unfit to teach.

The approach which this court has taken in relating the terms of the statute at issue to a person's fitness to teach is the approach which virtually all the courts who have been faced with this issue have taken. The leading case in the field is *Morrison v. State Bd. of Educ.,* 1 Cal.3d 214, 82 Cal.Rptr. 175, 461 P.2d 375 (1969). In *Morrison,* the state Board of Education, which qualified the petitioner for employment as a teacher in the California public school system, charged that the petitioner's "life diploma" should be revoked because he had engaged in, among other things, "immoral conduct." The court ruled that the statute under which the petitioner was charged was not unconstitutionally vague, but only when the terms within— including "immoral conduct"—were read to imply an unfitness to teach. *Id.* "Without such a reasonable interpretation the terms would be susceptible to so broad an application as possibly to subject to discipline virtually every teacher in the state." *Id.* at 182–83, 461 P.2d at 382. The court went on to say that because terms such as "immoral conduct" cover such an unlimited area, a narrowed interpretation would prevent the Board from "having to act as the prophet to which it is revealed the state of morals of the people or the common conscience." *Id.* at 184, 461 P.2d at 383.

The court in *Morrison* concluded that

> the Board of Education cannot abstractly characterize [a teacher's conduct] as immoral ... within the meaning of [the statute] unless that conduct indicates that the petitioner is unfit to teach. In determining whether the teacher's conduct thus indicates unfitness to teach the board may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers. These fac-

tors are relevant to the extent that they assist the board in determining a teacher's fitness to teach, i.e., in determining whether the teacher's future classroom performance and overall impact on his students are likely to meet the board's standards. *Id.* at 186–87, 461 P.2d at 386. The court finds these criteria persuasive, and they provide a reasonable guide for the defendants to follow.

Many courts have relied on *Morrison* in ruling that similar statutes are facially constitutional with a limiting construction. In all of these cases, the courts have interpreted the words in the statutes to imply an unfitness to teach. *See Fowler v. Bd. of Educ. of Lincoln County, Ky.,* 819 F.2d 657 (6th Cir. 1987) (direct connection needed between misconduct and teacher's work); *Thompson v. Southwest School Dist.,* 483 F.Supp. 1170 (W.D.Mo.1980) ("immoral conduct" limited to mean "rendering a teacher unfit to teach" to avoid vagueness; *Morrison* factors relied upon); *Keene v. Bd. of Accountancy,* 77 Wash.App. 849, 894 P.2d 582 (1995) (citing *Morrison* and finding that statute "prohibit conduct indicating unfitness to practice the particular profession" in order to avoid unconstitutionality); *Hainline v. Bond,* 250 Kan. 217, 824 P.2d 959 (1992) (immoral means unfit to teach to avoid unconstitutionality); *Cochran v. Bd. of Educ. of Mexico School Dist. No. 59,* 815 S.W.2d 55 (Mo.App. E.D.1991) (relying on *Morrison* to find that "immoral conduct" implies an unfitness to teach); *Haley v. Medical Disciplinary Bd.,* 117 Wash.2d 720, 818 P.2d 1062 (1991) (relying on *Morrison* to find that "immorality" must prohibit conduct "indicating an unfitness to practice the profession" to escape vagueness); *Rogliano v. Fayette County Bd. of Educ.,* 176 W.Va. 700, 347 S.E.2d 220 (1986) (immorality vague unless nexus shown to unfitness to teach); *Ross v. Robb,* 662 S.W.2d 257 (Mo.1983) ("immoral conduct" taken in context of statute as a whole and limited to mean "conduct rendering plaintiff unfit to teach" isn't vague); *Clarke v. Bd. of Educ.,* 215 Neb. 250, 338 N.W.2d 272 (1983) (immoral and indecent must imply an unfit-

ness to teach); *Weissman v. Bd. of Educ. of Jefferson County School Dist. No. R—1,* 190 Colo. 414, 547 P.2d 1267 (1976) ("immoral" means unfit to teach) (citing cases in Iowa, Maine, New Jersey, New York, and Ohio for same proposition); *Clark v. Ann Arbor School Dist.,* 130 Mich.App. 681, 344 N.W.2d 48 (1983) (must show an unfitness to teach to discharge teacher). The statute at issue in this case is subject to a limiting construction and is, therefore, not unconstitutionally vague.

## IV. CONCLUSION

For the foregoing reasons, the defendants are entitled to judgment in their favor.[7]

---

7. Because the court concludes that the defendants are entitled to judgment, the issue of class certification becomes moot.